## 49868. PHILLIPS et al. v. THE STATE.

CLARK, Judge.

Mystery murder mistrialed.[1] Although our approach may be unorthodox, we use those three words as an appropriate basis for our consideration of this appeal in which a husband and his male friend were indicted for having caused the wife's death by use of "a substance containing deadly poisons and arsenic." (R. 4). At the conclusion of the state's evidence defendants moved for a directed verdict of acquittal which was overruled. Thereafter, as provided in Code Ann. § 27-1802 (b), the defense evidence was presented, followed by arguments from counsel and the charge to the jury from the court. After the jury was unable to agree, the court declared a mistrial. Thereupon the defendants filed a motion for judgment notwithstanding the mistrial which was subsequently amended. The trial court denied this motion and this appeal followed via an immediate review certificate.

1. *Mistrialed:* This appeal constitutes a landmark as it is Georgia's first appellate court ruling wherein reliance is solely upon the provisions of the 1971 statute

---

[1]An alliteration addiction prevails here over an aversion to verbalizing nouns.

which the legislature enacted as Code Ann. § 27-1802. Previous decisions (*McKenzey v. State,* 125 Ga. App. 508 (188 SE2d 116) and *Chambers v. State,* 127 Ga. App. 196 (192 SE2d 916)) involved appeals from guilty verdicts in which the refusal to direct an acquittal was only one of several enumerations of error. The present appeal confirms the views expressed by authors Manley F. Brown and Thomas W. Talbott in 23 Mercer Law Review 60: "The possibility of a directed verdict of acquittal or not guilty in a criminal case has always been remote in Georgia since there was no authority giving a trial judge power to grant such a motion... This [1971] statute fills an important gap which has long existed in connection with procedure in criminal cases in this state."

Subparagraph (a) of this statute provides: "Where there is no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom, shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense included in the indictment, the court may direct the verdict of acquittal to which the defendant is entitled under the evidence, and may allow the trial to proceed only as to the counts or offenses remaining, if any."

Subparagraph (b) deals with the continuance of the trial in the event the motion for directed acquittal is overruled. That procedure was followed here but since the court found it necessary to declare a mistrial its denial of the motion for a directed verdict of "not guilty" permits the accused defendants to have our appellate court limit its determination to the merits of their motion for a directed acquittal verdict.

2. *Murder:* Seldom is this court required to pass upon an appeal in a murder case because constitutionally jurisdiction exists exclusively in the Supreme Court "... in all cases of conviction of a capital felony." Code Ann. § 2-3704. Since, however, this appeal is not from a "conviction" jurisdiction is properly in our court. See *Horne v. State,* 212 Ga. 421 (93 SE2d 356).

3. *Mystery:* The facts of this case present elements suitable for a writer of murder mysteries. Consider the dramatis personae: an attractive young brunette nurse whose marriage had taken place only three months prior

to her death, her demise occurring under such circumstances as to puzzle her doctor; a young husband who is a laboratory technician in the hospital where the death occurred and who had been cautioned against his marriage by his friend; this friend was the husband's superior at the hospital laboratory and had been his roommate prior to the marriage and to whose apartment the accused spouse returned following his wife's death.

In fulfillment of his prosecutorial duties the district attorney presented witnesses who retraced step by step every activity which had transpired during the last week of the young wife's life as well as events that had occurred both prior to and during the short marriage. Most dramatic was the description by the doctors and nurses of their efforts to save the young woman's life at her final moments including mouth-to-mouth resuscitation and cardiac massage. In presenting the case the state produced a total of 23 witnesses. These included four doctors, a pharmacologist, a biochemist, a toxicologist from the State Crime Laboratory, twelve nurses, and miscellaneous hospital employees as well as friends of decedent and her mother. The state's exhibits included a newspaper picture of the young wife at the time she was crowned "Miss Hall School of Nursing," the complete hospital chart of 39 pages, and a plastic box containing portions of the decedent's liver and kidneys. This macabre evidence resulted from the autopsy performed with the husband's consent which he voluntarily gave immediately after the mysterious death.

But our assignment is not that of the detective who must prove "who done it." Nor is it our task to solve the enigma as to the cause of death, whether it be from arsenic as charged by the prosecution or from phosphorus poisoning as a side effect of potent drugs or the result of some disease. The attending physician himself was puzzled as he noted on page 28 of the hospital chart: "an autopsy has been obtained but nevertheless some speculation is in order about the possibility of problems. Number 1 would be perhaps septic shock, despite no temperature, 2. have to consider pulmonary emboli since the patient was taking birth control pills, 3. shock itself due to hypovolemia certainly must be considered."

Because all of the evidence is circumstantial, our job is to measure that evidence under the statutory standard stated in Code § 38-109: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." We have carefully read the 454 pages constituting the trial transcript and in addition have studied the hospital chart of 39 pages from which we have quoted only a portion concerning the doctor's puzzlement as to cause of death. The conclusion we reach is that the motion for a directed verdict of not guilty should have been granted. "The evidence in the present case is insufficient to exclude every other reasonable hypothesis except the guilt of the accused. There is no evidence to connect the defendant with the . . . [death] of his wife; there are only unexplained and suspicious circumstances, and these are not sufficient to convict a person of murder. [Cits.]" *Rodgers v. State,* 213 Ga. 797, 803 (102 SE2d 10).

Appellate courts should consider well before undertaking to release an accuséd where a jury has been unable to agree as to guilt. We are not unaware of the continued caterwauling concerning courts coddling criminals. Such criticism must not cause courts to fail in preserving the principles bequeathed to us by our Anglo-Saxon forebears and to follow the great humanitarian traditions of the English Common Law. These include the presumption of innocence, the burden of proof, and the necessity of the prosecution proving its case beyond a reasonable doubt. Georgia's codal hypothesis requirement in circumstantial evidence cases was originally judge-made law. In *Martin v. State,* 38 Ga. 295, that great Georgian, Joseph E. Brown,[2] as Chief Justice of the Supreme Court wrote: "Placing ourselves in the position of jurors trying this case, and applying the known rules of law to the evidence given in on the trial, we are not

---

[2]The monument of Governor and Mrs. Brown on the lawn of the capitol memorializes his public service as War Governor (1857-1865), Chief Justice (1867-1870), and U. S. Senator (1880-1891).

satisfied that the guilt of the defendants has been legally established. The rule of law, as we understand it, is, that the facts established by the evidence must not only be consistent with the hypothesis of the defendant's guilt, but must exclude every other reasonable hypothesis. In a case involving life, or penitentiary imprisonment for life, this rule should not be relaxed."

Additional support for our adherence to this innocence hypothesis comes from the oft-cited decision of *Davis v. State,* 13 Ga. App. 142 (78 SE 866) written by this court's first Chief Judge, Benjamin H. Hill.[3] The headnotes of that case state the applicable law: "1. Where the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence. 2. Guilt of a criminal offense must be proved beyond a reasonable doubt, and a conviction must not rest upon mere conjecture or bare suspicion."

These controlling principles require us to reverse the trial court which is to enter judgment sustaining the motion for acquittal.

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*

SUBMITTED NOVEMBER 4, 1974 — DECIDED DECEMBER 4, 1974.

*Howe, Howe & Sutton, Donald B. Howe, Jr.,* for appellants.

*John T. Perren, District Attorney,* for appellee.

---

[3]Our first Chief Judge (1849-1922) was the son and law partner of Benjamin Harvey Hill (1823-1882), a famed statesman who served in both the Confederate and United States Senates. His name is linked in our state's history with Alexander H. Stephens and Robert Toombs.