## 64073. MILLER v. THE STATE.

McMurray, Presiding Judge.

Defendant was indicted for the offenses of burglary and aggravated assault. On the trial of the case defendant was convicted of the offense of burglary and acquitted of the aggravated assault charge. Defendant appeals from his conviction of the offense of burglary, contending that the evidence was insufficient to support the conviction. *Held:*

The state's uncontroverted evidence shows that the burglary in question was perpetrated by a number of individuals, including one Goodsir. The essential question presented to the jury was whether the defendant was an accomplice of Goodsir and his confederates in crime.

Goodsir testified on behalf of the state that on the morning in question the defendant had picked him up to go to work but they were fired when they got there. They then went to see Flanagan in order to borrow money for gasoline. Flanagan agreed to loan the money but needed to be taken to get his check. At some point in time a fourth individual, Savage, joined the group. According to Goodsir's testimony as the four drove he and Flanagan conducted a whispered conversation in the back seat of defendant's automobile (driven by defendant) regarding committing the crime of burglary. During this time the stereo in the automobile was on, playing so loudly that the two in the back seat had difficulty hearing each other. At no time did anyone tell the defendant in the witness' presence about the intended burglary. However, this witness testified, over objection as to hearsay (which objection was denied), that Leon (co-conspirator) told him he had told the others about the burglary. After stopping at the home of some relatives of Flanagan the four continued to the location of some trash dumpsters positioned near the home which was burglarized.

There Flanagan insisted that they pull over so that he could use the bathroom. The defendant stayed with the car, the doors and trunk open, cleaning out the automobile while Flanagan and Goodsir went across the dirt road behind the dumpsters, cut through the woods and across another dirt road to the house which they burglarized. Flanagan forced his way into the house while Goodsir stood outside as lookout. Shortly thereafter Savage arrived as Flanagan was exiting with items taken from the home. According to Goodsir the defendant was gone with the automobile when he and Flanagan returned to the dumpsters. While at the dumpsters figuring out what to do next, the witness Goodsir and Flanagan were confronted by the state's other key witness, Garrett.

Garrett testified that he was sitting on the porch of a home nearby to victim's dwelling when he saw three guys run across the dirt road carrying objects which suggested to him that they may have broken into someone's house. Garrett got on his motorcycle and rode down the dirt road where he found the defendant pulled over to the side of the dirt road. Garrett told defendant that he was on private property and defendant stated that "he was hunting somebody." Garrett responded that there was no one living in the area with the name given by the defendant. Defendant then drove back down to the dumpsters. Garrett rode his motorcycle to the dumpsters. Upon arriving there he saw Goodsir, Flanagan and Savage run and duck behind the trash can (dumpster). According to Garrett's testimony, the defendant was sitting in his car with the engine running about 30 feet from the dumpsters. Garrett jumped off his motorcycle and started toward Goodsir. Goodsir and his companions were yelling to the defendant to leave, "to get gone." The defendant then backed up, "throws it in drive and cuts a circle and lays drag," heading in Garrett's direction, requiring him to move from the path of defendant's vehicle. Garrett never saw the defendant with the three running through the woods nor with any of the items taken from the house. After defendant left Garrett became involved in an altercation with Goodsir, Savage and Flanagan.

Defendant argues that the evidence was not sufficient to exclude every reasonable hypothesis save that of guilt. The state responds to the contrary, arguing that the defendant remained in the area after being informed that no one by the name he was seeking lived in the area. Also, defendant returned to the area where Goodsir, Flanagan and Savage emerged from the woods with the loot, and this testimony suggests a conspiracy of which defendant was a party in which he was the driver of the getaway car. The evidence may also infer that the defendant returned to the area where his companions, all of whom apparently lived some distance away and who had arrived with him,

had walked away from his vehicle and that this was the site at which the companions who were traveling together in defendant's automobile had separated and thus would be the rational location at which they would rejoin defendant. However, defendant's statement as to looking for another person and his rapid departure from the scene when the three co-conspirators were yelling for him to leave authorizes the jury to find that he was a co-conspirator intentionally aiding and abetting in the commission of the crime, that is, he was constructively present a convenient distance away, providing a getaway automobile. As was stated in *Fleming v. State,* 149 Ga. App. 781, 782 (256 SE2d 56), the evidence "supporting his role, both direct and circumstantial, was quite adequate to support his conviction." See also *Bogan v. State,* 158 Ga. App. 1, 2 (279 SE2d 229). Even if it is said that only circumstantial evidence was present connecting the defendant to the crime charged, it was a jury issue as to whether "[the] circumstances [were] sufficient to exclude every reasonable hypothesis save the guilt of the accused." *Bogan v. State,* 158 Ga. App. 1, 2-3, supra.

*Judgment affirmed. Banke and Birdsong, JJ., concur.*

DECIDED SEPTEMBER 9, 1982.

*M. Lynn Young,* for appellant.

*Jeff C. Wayne, District Attorney, Christopher Walker, Assistant District Attorney,* for appellee.