A94A2407. ELLERBEE v. THE STATE.
(450 SE2d 443)

BIRDSONG, Presiding Judge.

Roy Anthony Ellerbee appeals his judgment of conviction of theft by shoplifting. Appellant was tried for shoplifting and his first trial resulted in a mistrial; appellant was retried and convicted. Appellant enumerates seven errors. *Held*:

1. Assuming without deciding that the issue of denial of motion for directed verdict in appellant's first trial was not rendered moot following the subsequent mistrial and his retrial (compare *Rhyne v. State*, 209 Ga. App. 548 (1) (434 SE2d 76) with *Willis v. Maloof*, 184 Ga. App. 349 (361 SE2d 512) and *Phillips v. State*, 133 Ga. App. 461 (211 SE2d 411)), in the interest of judicial economy we accept appellate jurisdiction over the issue in appellant's first enumeration of error. OCGA § 5-6-34 (d).

The trial court did not err in denying appellant's motion for directed verdict of acquittal. When an enumeration is based on the overruling of a motion for directed verdict of acquittal which was grounded on insufficiency of the evidence, the proper appellate test is the "beyond a reasonable doubt test" expressed in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). On appeal a reviewing court may consider all the evidence in the case and must view the evidence in the light most favorable to the verdict. *Riden v. State*, 213 Ga. App. 17, 18 (1) (443 SE2d 865). Review of the transcript of

the first trial reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the theft by shoplifting offense for which he was brought to trial. *Jackson v. Virginia,* supra.

2. Appellant's second enumeration of error is crafted so unartfully as to fail to state any specific assignment of error with adequate specificity. To the extent the enumeration may be interpreted as asserting the trial court erred in granting appellant's motion for mistrial during the first trial, it is without merit. The record establishes that the judge had an ex parte communication with a holdout juror at the latter's request; the holdout juror who was visibly upset in essence requested to be removed from the jury, as it was hopelessly deadlocked 11-1, and she apparently perceived she was being subjected to undue pressure. The court subsequently reported these events whereupon appellant's counsel moved for mistrial, opposing vigorously any suggested corrective alternatives. The trial court granted appellant's mistrial motion. It is well settled that on appeal a party cannot complain of a judgment, ruling, or order that his own trial procedure, legal strategy, or conduct procured or aided in causing. See generally *Williams v. State,* 205 Ga. App. 445, 446 (2) (422 SE2d 309). Also, the trial court must exercise discretion in determining whether to grant or deny a mistrial motion. See *Grier v. State,* 209 Ga. App. 283, 284 (1) (433 SE2d 685). Appellant has failed to show the trial court abused its discretion by granting appellant's mistrial motion.

3. Appellant's third enumeration of error appears to assert that reversible error occurred in the first trial when an alternate juror was placed in the jury room with the other 12 jurors after the complaining juror had been excused from jury duty and without the alternate being properly selected as a replacement juror. The granting of appellant's motion for mistrial renders this particular enumeration moot. Assuming arguendo any other claim of error also is contained within this single enumeration, such procedure would violate OCGA § 5-6-40; this Code section requires that each enumeration shall set out separately each error relied upon. In the exercise of our appellate discretion, we elect to review no other error asserted within enumeration of error no. 3. *Robinson v. State,* 200 Ga. App. 515, 518 (2) (408 SE2d 820).

4. Appellant's assertion of error due to denial of his double jeopardy claim will be addressed in Division 5 below. Appellant requested a certificate of immediate review of the rulings of the trial court on appellant's double jeopardy claim, motion to renew and motion for acquittal notwithstanding a mistrial. Appellant's counsel argued that, as to the double jeopardy claim, the certificate could not be denied unless the court found appellant's position was frivolous and was

taken to delay the court. The trial court denied the request after setting forth a detailed chronology of events and ruling that "the plea [in bar] was not filed sufficiently in advance of trial, that, in fact, is a delaying device at this point." However, the record affirmatively establishes that previously the trial court had conducted a hearing, had considered appellant's double jeopardy claim on the merits and had denied that claim. Appellant's contention that its double jeopardy claim was summarily denied prior to trial is without merit. Moreover, any error is rendered moot by this court's consideration of appellant's double jeopardy claim in Division 5 below.

5. Appellant's fifth enumeration of error appears to assert two errors rather than one separate claim of error, and thus violates OCGA § 5-6-40. In our appellate discretion (*Robinson*, supra), we will address the claims that the trial court erred in failing to grant appellant's double jeopardy claim and that error occurred by not allowing appellant to appeal the denial of his double jeopardy claim before the State was allowed to try him again.

(a) Assuming arguendo that error had occurred in denying appellant an opportunity to appeal immediately the trial court's ruling as to appellant's double jeopardy claim, we find that by our consideration of this claim on its merits, any such error is rendered harmless. OCGA § 9-11-61.

(b) "Jeopardy attached in this case. Once the jury has been impaneled and sworn, jeopardy attaches." *Dotson v. State*, 213 Ga. App. 7, 8 (1) (443 SE2d 650). "Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard. . . . But in the case of a mistrial declared at the behest of the defendant [as occurred in the case at bar], quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." *Oregon v. Kennedy*, 456 U. S. 667, 672 (102 SC 2083, 72 LE2d 416). Rather, the general rule is that where a mistrial is granted at the behest of the defendant, a retrial is not barred by principles of double jeopardy unless the governmental conduct in question (from whomever derived) is intended to "goad" the defendant into moving for a mistrial. *Mobley v. State*, 262 Ga. 808, 809-810 (1) (426 SE2d 150). In this instance, during the course of deliberation, the holdout juror obtained an ex parte conference with the trial judge and asked to be released from jury duty. The trial court subsequently made a complete disclosure of these events. Appellant does not contend that the conduct of the trial court was intended to provoke appellant into requesting a mistrial. In fact, appellant conceded during the hearing of his double jeopardy claim that he did not "mean to imply that [the trial judge] did [communicate

with the juror] unwittingly or that [the trial judge] did it with malice either. [Appellant] only meant to say that it was not something that was intended to create the result that occurred." The record further reveals that appellant at the first trial was given at least one option other than mistrial but opposed continuing the trial using the alternate juror. The fact that appellant made a strategic choice that backfired and placed him in a "particular dilemma" does not justify a further expansion of the narrow exception announced in *Oregon v. Kennedy*, supra, and recognized in *Mobley v. State*, supra. Appellant's contention that the trial court erred in denying his claim of double jeopardy is without merit.

6. Appellant's sixth enumeration is that the trial court erred in finding a prima facie case of discriminatory peremptory strikes when the defense struck 12 white jurors; appellant is black. The principles of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) apply equally to the defense as to the prosecution. *State v. Carr*, 262 Ga. 893 (427 SE2d 273); see *State v. McCollum*, 262 Ga. 554 (422 SE2d 866). " '[W]here (, as here,) a [defense counsel] has disproportionately struck members of one race in the exercise of his peremptories, it is not sufficient rebuttal to rely on the composition of the jury as selected.' " *Smith v. State*, 263 Ga. 224, 226 (4) (430 SE2d 579); see also *Colquitt v. State*, 213 Ga. App. 789 (1) (446 SE2d 247); cf. *Congdon v. State*, 261 Ga. 398 (405 SE2d 677) (State uses peremptory challenges to challenge four black veniremen during trial of white defendant). It thus appears that the trial court did not err in concluding that a prima facie showing under *Batson* had been made.

Additionally, the record discloses that appellant offered to provide a racially-neutral explanation for his peremptory challenges even before the trial court determined affirmatively on the record that a prima facie case had been made. Once the party exercising peremptory challenges " 'has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot.' " *Lewis v. State*, 262 Ga. 679, 680 (2) (424 SE2d 626); accord *Asbury v. Ga. World Congress Center*, 212 Ga. App. 628, 629 (1) (442 SE2d 822) (since trial court required appellee to explain its strikes, the issue of a prima facie showing of discrimination is moot). Appellant's sixth enumeration as crafted is without merit.

7. Appellant's seventh enumeration of error is that the trial court erred in finding that a race-neutral explanation was not given by appellant regarding juror no. 70 and, as a result, seating juror no. 70.

Appellant explained that he struck juror no. 70 because she had been the victim of the crime of car theft and had worked for Delta for 27 years. However, the record reveals that there were a number of

jurors (both black and white) who had been crime victims and that juror no. 54, a black juror, was a crime victim and was not struck from the jury. The record also reveals that a black juror, no. 78, worked for Delta for 27 years also and her husband worked for Delta for 31 years, yet she was not struck from the jury.

After the trial court's determination that a race-neutral reason was not given for the strike of juror no. 70, the parties were ordered to restrike the jury; appellant again exercised a peremptory challenge against juror no. 70. The trial court, having concluded that juror no. 70 had been excluded for other than a racially-neutral reason, seated the juror. Although appellant objected to this procedure, no additional reason was offered for his exercise of peremptory challenge against juror no. 70.

(a) As a general rule, where multiple racially-neutral reasons are given for the peremptory strike of potential jurors, a *Batson* violation does not exist simply because one or more of those racially-neutral reasons was not used by the prosecutor to strike potential jurors of a different race. *Smith v. State*, 264 Ga. 449, 452 (3) (448 SE2d 179). However, the trial court's finding of purposeful discrimination is a finding of fact which ordinarily must be given great deference by an appellate court, since it largely will turn on evaluation of credibility. Moreover, the trial court can visually and auditorially observe the demeanor of both prospective jurors and counsel. Thus, we may only reverse the trial judge's determination that appellant's peremptory challenge was motivated by intentional discrimination if that determination is clearly erroneous. Compare *Asbury*, supra at 630 (1) and *Thomas v. State*, 208 Ga. App. 367, 368 (1) (430 SE2d 768). Here, in addition to considerations of demeanor, credibility and the failure to strike black jurors who were crime victims or worked for Delta, appellant struck 12 white jurors notwithstanding the reasons therefor. Thus, several factors existed both in support of and in opposition to the trial court's ruling. There exists some evidence to support the trial court's ruling; it is not clearly erroneous. This case is distinguishable from *Smith v. State*, supra, where it was held that the trial court's findings that there was no racial motivation for the prosecutor's exercise of peremptory strikes was not clearly erroneous.

(b) In view of our holding in Division 7 (a) above, we find that the trial court did not err in ordering juror no. 70 to be seated. Both the State and a criminal defendant have the constitutional right to have a jury whose members are selected pursuant to nondiscriminatory criteria (compare *Lewis*, supra at 680 (2) with *Carr*, supra); "and an individual juror has the *right* not to be excluded from a jury on account of race." (Emphasis supplied.) *Lewis*, supra at 680 (2). The trial court has constitutional authority to exercise such power as necessary in aid of its jurisdiction and to protect its judgments (Ga.

Const. 1983, Art. VI, Sec. I, Par. IV); accordingly, the trial court had the constitutional power to seat an individual juror determined to have been challenged in violation of *Batson*.

*Judgment affirmed. Blackburn and Ruffin, JJ., concur.*

DECIDED NOVEMBER 7, 1994 —
RECONSIDERATION DENIED NOVEMBER 22, 1994 —

*James J. Dalton II*, for appellant.

*Robert E. Keller, District Attorney, Mary D. Hanks, Assistant District Attorney,* for appellee.