## A95A1450. SORRELLS v. THE STATE.
(461 SE2d 904)

SMITH, Judge.

Keith Sorrells was indicted by a Clarke County grand jury on one count of selling cocaine, OCGA § 16-13-30 (b). He was tried by a jury and found guilty, his motion for new trial was denied, and he appeals.

1. Sorrells asserts the general grounds, contending the identification testimony was unreliable. The evidence shows that an undercover agent of the Georgia Bureau of Investigation positively identified Sorrells as the person from whom he purchased cocaine, and a video and audio tape of Sorrells selling the cocaine to the agent was played for the jury. Moreover, a sergeant of the Athens-Clarke County Police Department "immediately recognized" the person on the videotape as Sorrells, whom he had known "since he was a teenager."

Sorrells contends that testimony from his mother and sister established that he was misidentified. Contradictory testimony, however, was elicited on cross-examination. The evidence was in conflict, but in light of the videotape and the positive identification by the law enforcement officers, the jury was authorized to reject, and did reject, the defense testimony. "We do not determine the credibility of eyewitness identification testimony. Rather the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury. Moreover, on appeal, we must view the evidence in the light most favorable to the verdict; the appellant no longer enjoys the presumption of innocence; and, rather than weighing the evidence or determining the credibility of witnesses, this court determines evidentiary sufficiency." (Citations and punctuation omitted.) *Jones v. State*, 214 Ga. App. 788, 789 (449 SE2d 330) (1994).

There was ample evidence presented from which a rational trier of fact could reasonably find that Sorrells was guilty of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Sorrells also contends the trial court erred in denying his motion under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Sorrells objected at trial to the striking of four members of the panel, but he enumerates error on appeal as to only one prospective juror. We note that the prosecutor offered racially-neutral explanations for his peremptory challenges before the trial court determined affirmatively on the record that a prima facie case had been made. Once the prosecutor offered racially-neutral explanations for the peremptory challenges and the trial court ruled on that basis, the preliminary issue of whether the defendant made a prima facie showing became moot. *Ellerbee v. State*, 215 Ga. App. 312, 315 (6) (450 SE2d 443) (1994).

In reviewing the trial court's disposition of a *Batson* motion, we must bear in mind that the prosecutor's explanation need not justify a challenge for cause, but must be neutral, related to the case to be tried, and reasonably specific. *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987). The trial court's decision rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies " 'peculiarly within a trial judge's province.' [Cits.]" *Smith v. State*, 264 Ga. 449, 454 (448 SE2d 179) (1994). The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous. *Lingo v. State*, 263 Ga. 664, 666 (1) (b) (437 SE2d 463) (1993).

The reasons offered by the prosecution were sufficiently race neutral to withstand the *Batson* challenge. The prosecutor explained that the panel member in question had been stricken from another panel on the preceding day, and "I don't like to use people I struck the day before." Although the panel member resided in a "very high crime area," the prosecutor stated that was not the reason he struck her. He did so because he believed she was inattentive and unresponsive to his questions; also, she had expressed concern to the court on the previous day regarding her absence from her job and whether or not she would be paid promptly. The trial judge noted that he had, in fact, made special arrangements for this panel member to receive her pay on a daily basis rather than at the end of her service.

While the courts have noted that striking a panel member solely on the basis of residence in a particular neighborhood may be grounded in an improper "stereotypical belief," Sorrells' reliance on *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993), is misplaced. The prosecutor in *Congdon* acknowledged he would have stricken from the panel *any* black resident of a Georgia town because of an unrelated, controversial criminal investigation. 262 Ga. at 683-684. This was an improper reason for exercising a peremptory strike and required a new trial. Id. at 685. The Supreme Court has held, in contrast, that residence in an area in which a particular type of crime is prevalent may justify use of a peremptory strike in a case in which that type of crime is involved. *Smith v. State*, supra, 264 Ga. at 449-451 (explanation that gang activity was prevalent in particular public housing project racially-neutral where offense charged was gang-related and gang members were witnesses). Here, the undercover agent testified to drug purchases made in the panel member's neighborhood during the undercover operation that led to Sorrells' arrest. Taking this information in conjunction with the striking of the panel member on the preceding day, the panel member's inattention, and her concerns about her employment and financial situation, we cannot say the trial court's denial of Sorrells' *Batson* motion was clearly erroneous.

3. Sorrells also contends the trial court erred in refusing to admit the testimony of a deputy sheriff that the undercover agent witness for the State allegedly misidentified a defendant in an unrelated criminal prosecution. A similar contention was rejected by the Georgia Supreme Court in *Salisbury v. State*, 223 Ga. 414 (2) (156 SE2d 48) (1967) (trial court properly excluded testimony that eyewitnesses had mistakenly identified perpetrators of unrelated criminal offenses). " 'It may be stated that generally the best method of attacking the credibility of an eyewitness' identification is by cross-examination. The memory of a witness may not be disparaged by other witnesses in order to impeach that testimony; it must be done by cross-examination of the witness whose recollection is attacked. [Cits.]' [Cits.]" *Porter v. State*, 188 Ga. App. 675, 676 (2) (373 SE2d 805) (1988). The agent was extensively cross-examined on this issue, and the cross-examination covered the alleged misidentification to which the deputy sheriff would have testified. The trial court did not err in excluding this testimony.

4. In Sorrells' final enumeration of error, he contends that his trial counsel was ineffective, based solely on counsel's failure properly to subpoena the deputy sheriff. Although the deputy objected to testifying on the ground that he had not been properly subpoenaed, the trial court sustained the State's objection on the ground of relevance. Because we have concluded in Division 3 of this opinion that the trial court did not err in this decision, it follows that the failure properly to subpoena the witness was harmless. See generally *Ruffin v. State*, 201 Ga. App. 792, 795 (2) (b) (412 SE2d 850) (1991).

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED AUGUST 25, 1995.

*John W. Donnelly*, for appellant.
*Harry N. Gordon, District Attorney, Gregory K. Schwarz, Assistant District Attorney*, for appellee.