## A96A0403. MOAK v. THE STATE.
(473 SE2d 576)

SMITH, Judge.

Gary Alan Moak and co-defendant Charles Lucien Barker[1] were indicted by a Cobb County grand jury on one count of arson in the first degree. OCGA § 16-7-60. The jury found Moak guilty, and he appeals from the judgment of conviction and sentence.

1. Moak asserts the general grounds. Construed in favor of the jury's verdict, the evidence shows that Moak and a man later identified as Barker arrived uninvited and intoxicated at a cookout outside the victim's trailer. They refused when asked to leave, an altercation developed, and a friend of the victim came to blows with Barker. Moak and Barker then left, and the victim heard them both say, "[T]here is going to be a big bonfire tonight." A neighbor was standing outside his trailer when Moak and Barker approached him "saying there is going to be a fire tonight." Stating "we are going to get them back," they asked the neighbor and a second neighbor to "go fight" with the victim. The neighbors refused because they knew the victim. The neighbors then saw Barker take a gasoline can from his car and empty it in front of one neighbor's trailer. When they protested that he should not empty it there, both men stated that it was just water, "but we are going to go get some gas." Barker then walked down the hill towards a local store with the can. As Barker left, the second neighbor's wife asked Moak if his friend had run out of gas. According to yet another witness, Moak responded that "there was going to be a big fire tonight." Moak also asked the second neighbor to "babysit his kids . . . while he took care of business."

When Barker returned about a half-hour later, he and Moak left together, walking up the hill towards the victim's trailer with the gas

---

[1] Co-defendant Barker was a fugitive at the time of trial.

can. About 45 minutes later, Moak returned alone and spoke with the second neighbor, asking "Do you smell it?" He then pointed to smoke rising in the sky and said, "I got them . . . don't tell no one." The victim's trailer was on fire; the trailer was destroyed, and the victim's pets were killed or injured. A guest asleep inside the trailer managed to escape but at the time of trial was still suffering from the effects of smoke inhalation.

A Cobb County fire investigator testified the fire was intentionally set by ignition with a flammable liquid at two points of origin underneath the trailer. The fire investigator found the remains of a red plastic container resembling a gasoline can, with a sock adhering to the container, at one point of origin. The sock had a strong odor of gasoline and tested positive for gasoline residue. After the fire investigator advised him of his rights, Moak agreed to be interviewed. He acknowledged the argument at the victim's trailer, and he admitted asking the neighbor to watch his children "because he felt like that there was going to be a fight or a problem with the people up the hill." At first he denied any knowledge of a gasoline can, then acknowledged Barker had removed a gasoline can from his car trunk, then again denied remembering anything about a gasoline can. He offered no explanation for his whereabouts at the time of the fire. Moak did not testify at trial.

Asserting that he was a mere bystander and that the absent Barker was the true perpetrator, Moak contends the evidence is insufficient to show he was a party to the crime. We disagree. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). To be concerned in the commission of a crime, a person may directly commit the crime, intentionally cause an incapacitated person to commit the crime, intentionally aid or abet in the commission of the crime, or intentionally advise, encourage, hire, counsel, or procure another to commit the crime. OCGA § 16-2-20 (b) (1)-(4).

"While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citations and punctuation omitted.) *Earl v. State,* 214 Ga. App. 891, 892 (1) (449 SE2d 361) (1994). It is true, as one witness acknowledged, that the evidence did not show "which one of them striked the match and threw the gas can, no, sir, I couldn't tell you." Testimony regarding Moak's statements and conduct before and after the arson, however, coupled with his presence on the scene, was sufficient evidence to allow the jury to conclude that Moak at a minimum was concerned in the commission of the crime, whether by

intentionally aiding and abetting or by advising and encouraging the arson. While Moak contends the witnesses were impeached or otherwise not credible, "the credibility of the witnesses was a matter for the jury; on appeal we consider the sufficiency of the evidence, viewing it in the light most favorable to support the jury's verdict. [Cit.] The evidence was sufficient for the jury to conclude beyond a reasonable doubt that [Moak] was a party thereto and guilty of the offense of [arson]." *Ellis v. State*, 211 Ga. App. 605, 608 (1) (440 SE2d 235) (1994).

2. Moak next complains that the trial court improperly limited his inquiry on voir dire into the willingness of jurors to consider the presumption of innocence if Moak exercised his right not to testify. This issue was addressed by this Court under virtually identical circumstances in *Henderson v. State*, 173 Ga. App. 302, 303 (1) (326 SE2d 246) (1985). Henderson contended the trial court erred in excluding a voir dire question "which in effect inquired whether knowing that a defendant does not have to present evidence and should that right be exercised, any juror would hold that election against [appellant]." Id. at 302. This Court held, "We find no error in the refusal to allow such a question on voir dire. The purpose of voir dire is to make inquiry into and expose any prejudice or bias a prospective juror might have against an accused person, or any interest a juror might have in a cause. The question propounded was not designed to inquire into either of those areas but sought to elicit whether a juror could follow a judge's charge that to impute guilt to an exercise of testimonial silence is improper. It has long been the law of most jurisdictions including Georgia that it is not within the purview of voir dire to inquire into technical legal questions, especially those ultimately involving the presumption of innocence, which are more properly the subject of a legal charge by the trial court." (Citations and punctuation omitted.) Id. at 302-303. This enumeration of error is without merit.

3. Moak, who is white, contends the trial court erred in overruling his challenge to the State's use of a peremptory challenge to strike an African-American member of the jury venire solely on the basis of race. *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Moak's challenge was made on the basis that the State struck one of the three African-Americans in the jury panel; Moak, however, struck the remaining two after they were accepted by the State.[2]

The prosecutor offered a racially neutral explanation for this

---

[2] The State responded to Moak's motion with a reverse *Batson* motion on the two prospective jurors struck by Moak. This motion was likewise denied.

peremptory challenge before the trial court determined affirmatively on the record that a prima facie case had been made, and the trial court ruled on that basis. The preliminary issue of whether the defendant made a prima facie showing therefore became moot. *Ellerbee v. State*, 215 Ga. App. 312, 315 (6) (450 SE2d 443) (1994).

"In reviewing the trial court's disposition of a *Batson* motion, we must bear in mind that the prosecutor's explanation need not justify a challenge for cause, but must be neutral, related to the case to be tried, and reasonably specific. The trial court's decision rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Citations and punctuation omitted.) *Sorrells v. State*, 218 Ga. App. 413, 414 (2) (461 SE2d 904) (1995).

The trial court found that the State had "articulated sufficient grounds . . . that were not related to the race of the individual to have stricken [the juror]." The prosecutor explained that this prospective juror was stricken because he seemed "angry," "annoyed and just impatient with being here . . . just plain not happy to be here," and was "very reluctant in his answers . . . short with his answers, brief." The prosecutor claimed her "fear was that he might take [his] annoyance out on the State." Perceived inattention, nonresponsiveness, and hostility have been found to be legitimate, racially neutral reasons for striking a prospective juror. See, e.g., *Lingo v. State*, 263 Ga. 664, 667 (1) (b) (5), (1) (b) (8) (437 SE2d 463) (1993) (perceived lack of desire to serve, lack of responsiveness and attention, and hostility); *Berry v. State*, 263 Ga. 493, 494 (435 SE2d 433) (1993) (prospective juror described as "hostile" and reluctant to talk); *Sorrells*, supra (prospective juror described as inattentive, unresponsive, and reluctant to serve); *Evans v. State*, 183 Ga. App. 436, 440 (3) (359 SE2d 174) (1987) (prospective jurors "did not appear to be particularly interested in or responsive to the selection process").

Even without considering the requirement that we give great deference to the trial court's findings, it is apparent from the record that the State's peremptory challenge was not purposefully discriminatory. This enumeration of error is without merit.

4. Moak contends the trial court erred in its charge to the jury on the burden of proof. A portion of the court's charge is reported as, "the State is not required to prove the guilt of the accused beyond all reasonable doubt." This contention is controlled adversely to Moak by *Whitt v. State*, 257 Ga. 8, 9 (3) (354 SE2d 116) (1987), in which the Georgia Supreme Court refused to find this error harmful: "[Appellant] finally contends that the trial court erred in charging the jury that the state was not 'required to prove the guilt of the defendant

beyond all reasonable doubt, but (was) required to prove beyond a reasonable doubt.' While this charge clearly constitutes error, we find that the charge as a whole properly informed the jury of the state's burden of proof. We will not, accordingly, reverse this case on the basis of a slip of the court's tongue. [Cit.]" Id. at 9.

The State has called attention to this Court's decision in *Chamberlain v. State*, 216 Ga. App. 207 (453 SE2d 793) (1995), contra. Because *Chamberlain* is in direct conflict with *Whitt*, it must be overruled to avoid confusion. The charging error is not only "similar" to that in *Whitt*, as contended by the special concurrence; it is a virtually identical error in the same portion of the pattern charge on the presumption of innocence. Moreover, *Chamberlain* explicitly rejects the reasoning in *Whitt* that the error can be cured by some other portion of the charge: "[O]ther parts of the charge are merely inconsistent with this erroneous charge and do not explain or reconcile this erroneous charge with the full charge." 216 Ga. App. at 208. *Chamberlain* goes on to assert that "this part of the charge has a different purpose from the parts of the charge on reasonable doubt that were correctly given," and thus cannot be cured. Id. In *Chamberlain*; *Whitt*; *Postell v. State*, 200 Ga. App. 208, 210 (2) (407 SE2d 412) (1991), rev'd on other grounds, 261 Ga. 842 (412 SE2d 831) (1992); and the present case, the asserted errors were verbal slips that apparently went undetected until review of the transcript. This means that under the reasoning of *Chamberlain*, there would be no opportunity for a trial court to cure such an error. *Whitt*, in contrast, stands for the opposite proposition: that the same verbal slip *can* be harmless in the context of full and otherwise correct instructions on the issue of reasonable doubt. Because the decision of the Supreme Court controls, *Chamberlain* must be overruled.

In *Postell*, supra, this Court relied on *Whitt* to affirm Postell's conviction despite a similar verbal slip during jury instructions. We noted that "on three occasions prior to giving this erroneous charge, and on six occasions subsequent thereto, the court instructed the jury that the state must prove the defendant guilty beyond a reasonable doubt." Id. Here, the trial court instructed the jury on this principle six times before its verbal slip and eleven times afterward, including detailed instructions immediately before and after the portion of the charge complained of. We note, moreover, that as in *Banks v. State*, 191 Ga. App. 344, 345 (3) (381 SE2d 548) (1989), neither the defense nor the prosecution called attention to this verbal slip at the time. Viewing the charge as a whole, we find beyond a reasonable doubt that the erroneous charge did not mislead or confuse the jury on the burden of proof or contribute to the verdict, and thus it was harmless error.

5. Moak contends the trial court erred in admitting, over objec-

tion, the testimony of the fire department investigator as to two witnesses' reports of Moak's incriminating statements and conduct at the time of the arson. While Moak contends this testimony amounts to double hearsay, his assertion is incorrect because neither Moak's admissions nor the witnesses' reports fall within the hearsay rule. First, Moak's statements on the scene are not excluded as hearsay, because "[a] voluntary incriminating statement or confession by a criminal defendant is admissible as an exception to the hearsay rule." (Citations and punctuation omitted.) *Summerour v. State*, 211 Ga. App. 65 (438 SE2d 176) (1993) (deputy properly testified to contents of missing letter written by defendant). Second, the witnesses' statements, whether consistent or inconsistent, are admissible under the rules established in *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985), and *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). "Under *Gibbons*, . . . a prior inconsistent statement made by a witness who takes the stand and is subject to cross-examination is not limited in value to impeachment, but is admissible as substantive evidence of the matter asserted. Under *Cuzzort*, supra, 'where the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible (as substantive evidence).' [Cit.]" *Foster v. State*, 216 Ga. App. 26, 28 (2) (453 SE2d 482) (1994). See also *Watson v. State*, 214 Ga. App. 650, 651 (1) (448 SE2d 718) (1994).

The witnesses identified by the fire investigator testified at trial and were subjected to vigorous cross-examination by Moak. In particular, Moak's counsel challenged the truth of their testimony at trial and attempted to impeach them with preliminary hearing testimony, prior criminal convictions, and other matters. Moak also suggested that the witnesses' account of events had changed, and the testimony of the investigator was at least in part relevant to refute this contention by showing consistent statements under *Cuzzort*. Accordingly, both Moak's admissions and the witnesses' statements come within exceptions to the hearsay rule, and the trial court did not err in admitting the statements over Moak's hearsay objection.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Blackburn and Ruffin, JJ., concur specially.*

BIRDSONG, Presiding Judge, concurring specially.

Although I concur fully with all that is said in the other divisions of the opinion and in the result, I cannot concur with that part of Division 4 of the majority opinion that overrules *Chamberlain v. State*, 216 Ga. App. 207 (453 SE2d 793), because of a perceived direct conflict with *Whitt v. State*, 257 Ga. 8 (354 SE2d 116). Even though

*Whitt* and *Chamberlain* reached different results on whether a similar charging error was harmful in light of the full charges given, no conflict exists between them. As nothing in *Chamberlain* or *Whitt* suggests that the full charges given were the same, the cases are distinguishable.

In *Whitt*, supra at 9 (3), the trial court charged "the state was not 'required to prove the guilt of the defendant beyond all reasonable doubt, but (was) required to prove beyond a reasonable doubt,' " and in *Chamberlain*, supra at 208 (2), the trial court charged " 'the state is not required to prove the guilt of the accused beyond all reasonable doubt or to a mathematical certainty.' " (Emphasis omitted.) Though these charging errors both concerned charges on reasonable doubt, they are not identical, and, more significantly, *Whitt* does not hold that a slip of the tongue error in the reasonable doubt charge is always harmless.

Indeed, in *Whitt* the Court considered the full charge given and found that in the context of the full charge the slip of the tongue was harmless error. See *Whitt*, supra at 9. This result is consistent with the rule that mere verbal inaccuracies in a charge, resulting from a palpable slip of the tongue, which clearly could not have misled or confused the jury do not constitute reversible error. *Gober v. State*, 247 Ga. 652, 655 (278 SE2d 386); *Siegel v. State*, 206 Ga. 252 (2) (56 SE2d 512).

Thus, it is incorrect to focus merely on the similarity of the slip of the tongue in these cases. No case has held that this particular slip of the tongue is always harmless error, and to so hold would violate the principle that charging errors are presumed to be harmful unless the record shows that the error was actually harmless. *Foskey v. Foskey*, 257 Ga. 736, 737 (363 SE2d 547); *Barton v. State*, 79 Ga. App. 380, 387 (53 SE2d 707). Further, it is a fundamental rule that jury instructions must be considered as a whole in determining whether there was error in the charge. *Hambrick v. State*, 256 Ga. 688, 690 (353 SE2d 177). Therefore, appellate courts must test the full charge to see if the slip of the tongue was harmful.

After applying this principle, *Chamberlain* held that, notwithstanding the full charge, the error was not harmless because there was a fair risk the slip of the tongue could have confused or misled the jury. We concluded that the part of the charge in which the slip of the tongue occurred had "a different purpose from the parts of the charge on reasonable doubt that were correctly given; when correctly given, it places a limit on the prosecution's burden, i.e., not beyond all doubt or to a mathematical certainty. Consequently, while the other parts of the charge correctly instructed the jury that the prosecution was required to prove Chamberlain's guilt beyond a reasonable doubt, this erroneous charge allowed the jury to convict Cham-

berlain while still retaining some reasonable doubt about his guilt." *Chamberlain*, supra at 208. "A charge containing two distinct propositions conflicting the one with the other is calculated to leave the jury in such a confused condition of mind that they can not render an intelligible verdict. Where an erroneous charge on a material issue is of such a nature as is calculated to confuse or mislead the jury, a new trial will be granted, notwithstanding the correct rule may have been announced in another portion of the charge." (Citations and punctuation omitted.) *Tietjen v. Meldrim*, 169 Ga. 678, 696 (151 SE 349). As the charging error in *Chamberlain* was not rendered harmless by the full charge, reversal was required.

Therefore, as there is no legal conflict between *Whitt* and *Chamberlain*, overruling *Chamberlain* is not required. Moreover, as *Chamberlain* and *Whitt* both considered whether an error was rendered harmless by the full charge, that part of the majority opinion which states that *Chamberlain* somehow rejects the reasoning in *Whitt* that a slip of the tongue charging error can be corrected by the full charge is incorrect. *Whitt* does not hold that this error is always harmless; *Chamberlain* does not hold that the error is always harmful. The cases reached different results after testing the error for harm.

In this case, however, I do not find the slip of the tongue is reversible error. The full charge, and in particular the part of the charge that instructed the jury that the State was required to prove each and every essential element of the crimes charged beyond a reasonable doubt, was sufficient to render the error harmless.

Nevertheless, *Chamberlain* should not be overruled. Doing so would mean that a jury could be instructed that they could convict even though the jury had a reasonable doubt about the defendant's guilt, and that result violates one of the fundamental precepts of our system of criminal justice. Accordingly as a majority of the Court has joined in this special concurrence, *Chamberlain* remains binding precedent. OCGA § 15-3-1 (d).

I am authorized to state that Chief Judge Beasley, Presiding Judge Pope, Judge Andrews, Judge Blackburn and Judge Ruffin join in this special concurrence.

DECIDED JUNE 28, 1996.

*Nicholas Pagano*, for appellant.

*Thomas J. Charron*, District Attorney, *Debra H. Bernes, Beth T. Golub, Nancy I. Jordan*, Assistant District Attorneys, for appellee.