## A98A0759. CRAWFORD v. THE STATE.
### (504 SE2d 19)

SMITH, Judge.

Tony Anthony Crawford was indicted by a Worth County grand jury for possession of less than one ounce of marijuana, OCGA § 16-13-30 (j) (1), and possession of a firearm by a convicted felon, OCGA § 16-11-131. He was convicted by a jury, his motion for new trial as amended was denied, and he appeals. Finding no error, we affirm.

1. Crawford asserts the general grounds. Construed in favor of the jury's verdict, the evidence shows that a narcotics investigator for the Worth County sheriff's office obtained a search warrant for Crawford's residence. The investigator and sheriff's deputies went to the residence the same evening to execute the warrant. Crawford answered the door, and one of the deputies found a bag containing suspected marijuana in Crawford's left rear pocket. A chemist with the State Crime Lab identified the substance as marijuana. The deputies continued the search and found a .22 magnum revolver on the headboard of the bed. The cylinder for the revolver was found, loaded, in a dresser drawer containing men's underwear, socks, and other clothing.

(a) With respect to the conviction for possession of marijuana, Crawford contends the State failed to prove the date of possession as alleged in the indictment. Because the indictment alleges the date of the offense as material, the proof must correspond to the date alleged. *Price v. State*, 247 Ga. 58, 59, n. 1 (273 SE2d 854) (1981). But "[c]ircumstantial evidence may be used to ascertain the date in question. [Cits.]" *Decker v. State*, 139 Ga. App. 707, 710 (5) (229 SE2d 520) (1976). While the officers' testimony refers only to November 1995 without a specific date, the narcotics investigator also testified that the search of Crawford's residence was made on the "same evening" the warrant was obtained. The search warrant itself and the inventory sheet filled out by the investigator after the search were admitted into evidence without objection; both documents are dated November 22, 1995. In presenting the direct testimony of Crawford's

girlfriend, defense counsel also referred to the date of November 22, 1995. Taken as a whole, the testimony and evidence adduced at trial were sufficient for a rational trier of fact to find beyond a reasonable doubt that Crawford possessed marijuana on November 22, 1995. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) Crawford also contends the State failed to prove that he possessed the firearm, which was found in two pieces, one on the headboard of the bed and the other in a dresser drawer. Crawford's live-in girlfriend testified that she had borrowed the revolver from a friend and that Crawford never handled or exercised control over it. But the girlfriend's testimony as to where she left the revolver on the night of the search was inconsistent with the officers' testimony as to where it was found. She testified that she placed the revolver and cylinder on top of the dresser before she left for work that evening. She also testified that the cylinder was unloaded when she left the house. When the officers executed the search warrant, however, they found the revolver on the headboard, the cylinder in a dresser drawer containing men's clothing, and four cartridges in the cylinder. A jury is authorized to find constructive possession of a firearm by one occupant of a shared bedroom when the firearm is found in a dresser drawer containing clothing appropriate to that occupant's sex. *Cantrell v. State*, 204 Ga. App. 330, 331-332 (419 SE2d 141) (1992). Constructive possession is sufficient to prove a violation of OCGA § 16-11-131. *Simpson v. State*, 213 Ga. App. 143, 145-146 (444 SE2d 115) (1994). The jury weighed the evidence and judged the witnesses' credibility; the evidence was clearly sufficient to prove beyond a reasonable doubt that Crawford possessed the firearm found in his headboard and dresser drawer. *Jackson v. Virginia*, supra.

2. The trial court did not err in returning two jurors to the jury panel after Crawford exercised his peremptory strikes to remove them.[1] "The principles of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) [(1986)] apply equally to the defense as to the prosecution. [Cits.]" *Ellerbee v. State*, 215 Ga. App. 312, 315 (6) (450 SE2d 443) (1994). Peremptory jury strikes may not be based upon race or gender, and claims of racial or gender-based discrimination are evaluated under the same standard. *McGlohon v. State*, 228 Ga. App. 726, 727 (492 SE2d 715) (1997) (physical precedent only). Crawford, an African-American, exercised all eleven of his peremptory strikes against white prospective jurors; nine were used against white male jurors. This established a prima facie case of discriminatory use of peremptory challenges. *Gamble v. State*, 257 Ga. 325, 327

---

[1] While Crawford enumerates as error the reinstatement of two jurors, in the body of his brief he discusses the reinstatement of three jurors. In this case, the discrepancy is insignificant, because Crawford offered the same explanation for all three peremptory strikes.

(6) (357 SE2d 792) (1987); *Osborne v. State*, 263 Ga. 214, 215 (3) (430 SE2d 576) (1993).

"To evaluate claims that the state or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent." (Footnotes omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). The trial court's findings are entitled to great deference and will be affirmed unless clearly erroneous. *Gamble*, supra at 327 (5).

While the trial court's use of the three-step process is not crystal clear, it is apparent, viewing the voir dire transcript as a whole, that the trial court first determined that a prima facie case had been made, listened to Crawford's reasons for all the challenged strikes, then allowed the State to respond before making a decision. This indicates that the trial court accepted Crawford's explanations as race-neutral under the second step of the test, but at the third step chose to disbelieve them following the State's response. *Russell v. State*, 230 Ga. App. 546, 548 (2) (497 SE2d 36) (1998).

To rebut a prima facie case of discrimination in the use of peremptory strikes, the proponent of the strikes must explain each one. "The explanation need not rise to the level justifying exercise of a challenge for cause, but it must be neutral, related to the case to be tried, and a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges." (Citation and punctuation omitted.) *Gamble*, supra at 327 (5). But "rubber stamp approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson's* commitment to ensure that no citizen is disqualified from jury service because of his race." (Citations and punctuation omitted.) Id.

The explanation offered for striking each challenged juror must be evaluated in light of the explanations offered for Crawford's other peremptory strikes and the strength of the prima facie case. Explanations for other strikes may affect the trial court's decision: "A court charged with the duty of determining whether the [proponent] has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a . . . juror when all the remaining explanations are persuasive than where several of the [proponent's] proffered justifications are questionable. Similarly, a weak prima facie case may be rebutted more readily than a strong one." Id.

Here, Crawford employed virtually the same words in explaining his peremptory challenges to seven of the nine white male jurors

challenged. Counsel repeatedly stated as an explanation that a white male juror was "very conservative," "very hard-headed" or "hot-headed," and "impulsive" or "quick to make decisions." Seven times, counsel simply stated that a white male juror was challenged "for the same reason" or "reasons" or "the same theory." He acknowledged, "I realize I'm repeating myself a lot, but it's the same theory we've used."

Viewing the record on voir dire as a whole, it is clear that the trial court concluded the "conservative, impulsive, hot-headed (or hard-headed)" explanation, either repeated verbatim or in the short-hand form of "same reason," was pretextual under the third step of the relevant analysis.[2] With respect to one of the jurors at issue here, Crawford's counsel also stated, "we were trying to get down the list to get also some black people, which Mr. Crawford is African-American and try to get some more black people on the jury than we were able, to have a fair share." In light of this candid acknowledgment that race formed a significant part of Crawford's decision-making in striking one juror for whom the same explanation was given as for seven other white male jurors, we cannot say that the trial court's rejection of this repetitive explanation was clearly erroneous.

3. Crawford next complains that the trial court erred in admitting into evidence a certified copy of his prior felony conviction, contending that the State failed to prove he was the same "Tony Crawford" named in that guilty plea and judgment of conviction. The narcotics investigator testified that he had known Crawford for six years. The investigator testified without objection that he verified through the crime information computer Tony Crawford's name, address, and social security number on the prior felony conviction. Evidence was also presented that Crawford is known as "Tony Crawford." "Concordance of name alone is some evidence of identity. Further, in the absence of any denial by [Crawford] and no proof to the contrary this concordance of name is sufficient to show that [Crawford] and the individual previously convicted were the same person. Accordingly, this enumeration is without merit." (Citations and punctuation omitted.) *Mincey v. State*, 186 Ga. App. 839, 841 (4) (368 SE2d 796) (1988).

4. Finally, Crawford enumerates as error the denial of his motion to suppress.[3] Without any statement of facts or argument, he

---

[2] Significantly, the trial court did not return prospective jurors to the panel when Crawford articulated other non-race- and gender-based explanations for his peremptory strike. For example, the trial court accepted strikes when the prospective juror had had disagreements in the past with others in defense counsel's law firm and when the prospective juror had had personal dealings with Crawford.

[3] The hearing on the motion to suppress was held after the case was submitted to the jury; no explanation for this procedure appears in the record.

contends that the warrant did not set forth sufficient facts from which the magistrate could independently determine the reliability of the information or the informant and that the information was insufficiently corroborated. We disagree.

The narcotics investigator testified that a confidential informant had been inside Crawford's house within 72 hours of the application for a search warrant and had seen a quantity of cocaine while in the house. The investigator also testified that he had used the confidential informant "probably eight to ten times," and "pretty much everything that this informant had told me had led to an arrest." The affidavit in support of the application for a search warrant stated that "this informant has proven to be reliable in the past by providing information which has led to the arrest of approx. 10-12 persons and the recovery of illegal drugs." The officer also verified the description of the property as provided by the informant.

Under "common-sense" evaluation, a similarly worded affidavit has been held sufficient to demonstrate the informant's reliability. *Bowe v. State*, 201 Ga. App. 127, 130-131 (410 SE2d 765) (1991). While Crawford contends the informant's information was not sufficiently corroborated, corroboration is not uniformly *required* in every case involving a reliable informant. Under a "totality of the circumstances" approach, corroboration simply supplies an alternative "basis for finding probable cause, despite deficiencies in the showing of the informant's veracity, reliability, or basis of knowledge. [Cits.]" *Munson v. State*, 211 Ga. App. 80, 82 (438 SE2d 123) (1993). Where, as here, these factors were established by other means, corroboration was not required in order for a warrant to issue.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 22, 1998 —
RECONSIDERATION DENIED JULY 9, 1998.

*Sims, Fleming & Spurlin, James M. Walker III*, for appellant.
*C. Paul Bowden, District Attorney*, for appellee.