A98A0017. RICHARDSON v. THE STATE.
(504 SE2d 65)

SMITH, Judge.

Charlie James Richardson was convicted by a Colquitt County jury of burglary, armed robbery, aggravated assault, and three counts of possession of a firearm during the commission of a felony. He appeals from the judgment of conviction, alleging error in the trial court's reinstatement of two jurors over his peremptory strikes and in failure to correct allegedly improper questioning by the State. We find no error and affirm.

1. The trial court did not err in returning two jurors to the jury

panel after Richardson exercised his peremptory strikes to remove them. "The principles of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) [(1986)] apply equally to the defense as to the prosecution. [Cits.]" *Ellerbee v. State*, 215 Ga. App. 312, 315 (6) (450 SE2d 443) (1994). Peremptory jury strikes may not be based upon race or gender, and claims of racial or gender-based discrimination are evaluated under the same standard. *McGlohon v. State*, 228 Ga. App. 726, 727 (492 SE2d 715) (1997) (physical precedent only).[1] Richardson exercised eight of his twelve peremptory strikes against white male prospective jurors.

"To evaluate claims that the state or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent." (Footnotes omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). The trial court's findings are entitled to great deference and will be affirmed unless clearly erroneous. *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987).

Richardson contends the State failed to establish a prima facie case of discriminatory use of peremptory challenges. It is true that "[t]he initial question is whether appellant established a prima facie case of discrimination to trigger the prosecutor's duty to give racially [or gender] neutral reasons for the exercise of his challenged peremptory strikes. However, once a prosecutor has offered a race-neutral [or gender-neutral] explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." (Citation and punctuation omitted.) *Lewis v. State*, 262 Ga. 679, 680 (424 SE2d 626) (1993); *Ellerbee*, supra at 315 (6).

While the trial court did not explicitly invoke every step of the process with respect to each juror, it is apparent, viewing the voir dire transcript as a whole, that the trial court first determined that a prima facie case had been made and listened to Richardson's reasons for all the challenged strikes. The trial court then accepted Richardson's explanations for all but two of the challenged jurors. But with respect to these jurors, the court allowed the State to respond to

---

[1] While *McGlohon* is physical precedent only, the special concurrence agreed with the principles stated in the majority opinion but advocated expansion of the deference given to the trial court's findings of fact in the third step of the three-step process described below. Id. at 729-732.

Richardson's explanations before making a decision. This indicates that the trial court accepted Richardson's explanations as race-neutral under the second step of the test, but at the third step chose to disbelieve them following the State's response. *Russell v. State*, 230 Ga. App. 546, 548 (2) (497 SE2d 36) (1998).

To rebut a prima facie case of discrimination in the use of peremptory strikes, the proponent of the strikes must explain each one. "The explanation need not rise to the level justifying exercise of a challenge for cause, but it must be neutral, related to the case to be tried, and a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges." (Citation and punctuation omitted.) *Gamble*, supra at 327 (5). Importantly, however, "rubber stamp approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson's* commitment to ensure that no citizen is disqualified from jury service because of his race." (Citations and punctuation omitted.) Id.

Here, the State challenged Richardson's strikes on the basis of both race and gender. With respect to the first juror at issue here, Richardson's counsel at first could not recall if the juror was an older man, but his co-counsel noted that he had served in the military from 1945 to 1948. Counsel offered the explanation that the juror was a "farm man" or "livestock man" and "looked very conservative." After questioning by the trial court, counsel stated his belief that the juror might have had livestock stolen from him at some time, and "[i]t just all added up to sort of a conservative bent to me." Pressed for additional reasons, counsel stated that his age was also a factor and that the next juror seemed preferable. After the State responded at the trial court's request, Richardson's counsel offered the additional reason that the juror was wearing a red, white, and blue tie. The trial court observed that there were other prospective jurors not excused by Richardson that were as old or older than this juror and appeared as conservative to the court. The court concluded that Richardson was "searching for something after the fact since he has been struck. I have not heard anything yet that I find is a legitimate explanation for the excusal of [this juror]."

With respect to the second juror at issue here, counsel was unable to locate his notes. Co-counsel stated that he had some concerns regarding the juror's health because he wore trifocals and appeared to be in some discomfort moving around the courtroom. Counsel added that the juror was apparently retired, and co-counsel added that "I think we found some jurors that were more desirable to us further down the line." The trial court concluded, as with the first juror, "considering the totality of the selection process, it appears to the court that a reason is being searched for after the fact to explain the excusal." The trial court also noted that, while age would ordina-

rily be a "legitimate concern" in a case involving elderly victims, age in itself was not a factor in exercising the strike because other persons of approximately the same age were not struck by Richardson.

Significantly, the trial court did not return prospective jurors to the panel when Richardson articulated other non-race- and gender-based explanations for his peremptory strikes. For example, the trial court accepted strikes when the prospective juror or a close relative had been a victim of robbery, knew the victims in this case, worked for the State or in law enforcement, or worked in the banking or financial industry. We must also consider the number of Richardson's strikes against white males and the trial court's conclusion that "counsel was engaging in post hoc rationalization," *McGlohon*, supra at 728. Viewing the record on voir dire as a whole, it is clear that the trial court concluded the explanations offered for these two jurors were pretextual under the third step of the relevant analysis.

"[T]he trial court's finding of purposeful discrimination is a finding of fact which ordinarily must be given great deference by an appellate court, since it largely will turn on evaluation of credibility. Moreover, the trial court can visually and auditorially observe the demeanor of both prospective jurors and counsel. Thus, we may only reverse the trial judge's determination that appellant's peremptory challenge was motivated by intentional discrimination if that determination is clearly erroneous." *Ellerbee*, supra at 316 (7) (a). Accordingly, we must affirm the trial court's decision to reseat these two jurors.

2. In his second enumeration of error, Richardson asserts two separate instances of alleged error in a single enumeration, in violation of OCGA § 5-6-40. "When, as here, an appellant asserts more than one error in a single enumeration, this court in its discretion may elect to review none, or one or more, of the errors asserted within the single enumeration." (Citations and punctuation omitted.) *Toledo v. State*, 216 Ga. App. 480, 482 (4) (455 SE2d 595) (1995). We elect to review Richardson's first assertion, that the prosecutor improperly asked a State's witness if his mother was present in the courthouse and available to testify.

On cross-examination of this witness, Richardson questioned him extensively regarding whether or not his mother was present during his interview with police investigators and whether she heard an investigator threaten the witness. When the witness testified that his mother was not present when this occurred, Richardson introduced for purposes of impeachment the witness's testimony in an earlier trial that his mother heard the investigator. It was in the context of this earlier testimony that the prosecutor asked on redirect examination where the witness's mother was and whether Richardson could call her as a witness if he wished.

The prosecutor's questions on cross-examination were not improper. "[T]he State is permitted to bring such relevant evidence to the attention of the jury from which it can permissibly draw such reasonable inferences as it deems appropriate, regarding the defendant's failure to produce a witness whom he has directly or indirectly claimed could support in whole or in part the theory of his defense. [Cits.]" *Pardo v. State*, 215 Ga. App. 317, 318 (5) (450 SE2d 440) (1994). This is particularly true when defense counsel opened the line of questioning regarding the presence of the witness's mother at his police interview "and then stopped the questioning in such a way as to raise an inference which redirect examination showed to be incorrect. Under those circumstances, the trial court's decision to admit the testimony falls within the narrow range of matters about which an appellant may not complain because his own procedure or conduct procured or aided in causing it. [Cit.]" *Griffin v. State*, 265 Ga. 552, 554 (3) (458 SE2d 813) (1995).

3. In his final enumeration of error, Richardson again attempts to raise multiple allegations of misconduct by the prosecutor and error on the part of the trial court. We again consider only one contention, that his character was impermissibly placed into evidence by references to gang-related activity during the State's examination of a witness.

The witness in question was called on behalf of the State, but when on the stand, he disavowed his previous written statement, denied having made it, and denied having reviewed and confirmed it in conference with prosecutors two days earlier. In questioning the witness regarding this testimony, the State asked him if he recalled saying that he was afraid of Richardson and that his "homeboys would get" him if he testified. The disavowed statement was read to the jury, and the State again asked the witness about his fear of Richardson, asking if he recalled his discussion in their meeting two days earlier regarding Richardson's "homeboys." The witness acknowledged that "you asked me about the gang and I told you," that he told the prosecutors about "two groups called the Fifth Ward and the Folks," and that he told them he was a member of a group with a different name. The State then asked the witness if Richardson was a "Folks"; Richardson objected, but only on the ground that the prosecutor was leading the witness. Only after the State again asked the witness if he said Richardson was a "Folks" did Richardson object on the ground that the question "cross[ed] the character line."

"Evidence is harmless where admissible evidence of the same fact is before the jury." *Maher v. State*, 216 Ga. App. 666, 667 (1) (455 SE2d 377) (1995). Before Richardson interposed any objection, the State asked and the witness answered numerous questions regarding his fear of Richardson and gang-related activity. The witness

himself first mentioned the word "gang," without objection. "The questions and answers that followed the overruling of defendant's objection were not substantially different. Consequently, any error in permitting the state to question [the witness on this topic] . . . was harmless. [Cit.]" *Vincent v. State*, 264 Ga. 234, 235 (442 SE2d 748) (1994).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 2, 1998 —

*Ronald R. Parker*, for appellant.

*H. Lamar Cole, District Attorney, Charles M. Stines, Assistant District Attorney*, for appellee.