A98A1546. RIDLEY v. THE STATE.
(510 SE2d 113)

RUFFIN, Judge.

A jury found Homer Ridley guilty of one count of rape and one count of kidnapping with bodily injury. Upon merging the two offenses, the trial court sentenced Ridley to life imprisonment. Ridley appeals from the trial court's order denying his motion for new trial, asserting that the trial court erred (1) in finding that the State exercised its peremptory strikes in a racially neutral manner; (2) in violating the rule of sequestration by allowing a material witness to remain in the courtroom during the proceedings; (3) in failing to take remedial action after the prosecution made improper and inflammatory remarks during closing argument; and (4) in denying his claim of ineffective assistance of trial counsel. Because the trial court erred in overruling Ridley's *Batson* challenge, we reverse his conviction and remand the case for a new trial.

1. Ridley, who is black, contends that the State engaged in purposeful discrimination in the exercise of its peremptory strikes, and that the trial court therefore erred in denying his motion based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

The transcript shows that the State used six of its ten peremptory strikes against black prospective jurors, and that it also struck one black alternate juror. Apparently, these seven jurors were the only black jurors in the entire jury pool. Although the trial court found that Ridley had not established a prima facie case of purposeful discrimination, the State concedes such a case was made. Because the State "offered racially-neutral explanations for the peremptory challenges and the trial court ruled on that basis, the preliminary issue of whether [Ridley] made a prima facie showing became moot." *Sorrells v. State*, 218 Ga. App. 413 (2) (461 SE2d 904) (1995); see also *Ellerbee v. State*, 215 Ga. App. 312, 315 (6) (450 SE2d 443) (1994).

Thus, we do not concern ourselves with whether Ridley made a

prima facie case below. Instead, "we must review the prosecutor's stated reasons for his strikes to determine whether they overcame [Ridley's] prima facie case of discrimination. In so doing, we must give the trial court's factual findings great deference. We may only disregard those findings if they are clearly erroneous." (Citations and punctuation omitted.) *Lingo v. State*, 263 Ga. 664, 665 (1) (b) (437 SE2d 463) (1993). "Of course, we may still disagree with the trial court's conclusions based on those findings and where there is a strong prima facie case, as here, we must carefully scrutinize those conclusions." Id. In that regard, we note that the State used 60 percent of its peremptory strikes against black jurors, and that it used an additional peremptory strike to purge the last black juror, an alternate, from the entire panel. When the State uses its peremptory strikes to exclude *all* black jurors from a panel, a court should carefully examine whether the race-neutral standard is in fact "neutral," or whether the State has simply learned to use "the right words" in order to subvert our system of justice. In carefully scrutinizing the State's reasons, we stress that they cannot be "too vague, too subjective, . . . non-specific, [or] non-case related." *Covin v. State*, 215 Ga. App. 3, 4 (449 SE2d 550) (1994); see also *Parker v. State*, 219 Ga. App. 361, 362 (1) (464 SE2d 910) (1995). Under these guidelines, we review the prosecutor's strikes as follows:

(1) The prosecutor struck two potential black jurors because one knew the defendant from high school and one knew the defendant's family. Ridley concedes that the reasons applied to these jurors who personally knew either him or his family "are arguably valid." We have previously held that familiarity with a defendant or his family is a race-neutral reason for striking jurors. *Byron v. State*, 229 Ga. App. 795, 797 (5) (495 SE2d 123) (1997); *Hightower v. State*, 220 Ga. App. 165, 166 (1) (469 SE2d 295) (1996); *Davis v. State*, 263 Ga. 5, 8 (10) (426 SE2d 844) (1993). Furthermore, the State also struck both a white male who knew Ridley and a white female alternate who knew the family of one of the prosecutor's assistants.[1] Accordingly, we cannot say that the trial court erred in upholding the State's strikes of these jurors.

(2) However, the prosecutor's striking of two potential black jurors solely because they had the same last names as defendants in other pending and prior actions gives us great concern. With respect to prospective juror Linda Felder Watkins, the prosecutor stated that his office had "many, many" charges pending against individuals named Felder. With respect to a potential alternate juror named Col-

---

[1] However, we note that the equal imposition of inequalities does not satisfy the demands of due process. *Shelley v. Kraemer*, 334 U. S. 1, 22 (68 SC 836, 92 LE 1161) (1948).

lins, the prosecutor stated that "many" other individuals named Collins had prior charges in his office. The prosecutor stated that he was "not sure" whether these potential jurors were in fact related to any of the individuals prosecuted by his office, and he did not ask the jurors whether they were so related. The trial court denied Ridley's *Batson* motion with respect to these jurors.

In *Byron*, supra at 798, we explained that with respect to "strikes based on the jurors' relationships with individuals who have been in trouble with the law, our Supreme Court has previously found that such a reason is race-neutral." However, we find it troubling that the prosecutor's sole reason for striking these two jurors was their last names, when he did not confirm through voir dire whether they were actually related to individuals who have been in trouble with the law. Cf. *Trammel v. State*, 265 Ga. 156, 157 (2) (454 SE2d 501) (1995), where the State struck a potential juror named Gilliam because she had the same last name as at least 13 people prosecuted by the district attorney's office since 1987. The prosecutor did not ask the juror whether she was related to these people, but told the trial court that, given the small size of the town, she was concerned that there might be a relationship.

Although the Supreme Court in *Trammel* found the prosecutor's explanation "troubling," particularly because she did not ask whether the juror was in fact related to the other defendants, it nevertheless upheld the trial court's determination that the strike was not racially motivated. Id. at 157-158. In so ruling, the Court relied upon the fact that "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." (Punctuation omitted.) Id. at 158. The Court thus stated that "there was no showing that the prosecutor's decision to strike was motivated by a stereotypical belief that all black persons named Gilliam were biased against the district attorney's office." (Punctuation omitted.) Id. at 157-158.

The Supreme Court's analysis in *Trammel* is rather dubious. In allowing the State to strike a juror based on nothing more than the juror's last name, without any inquiry into whether the juror is in fact related to a criminal defendant, the Supreme Court opens the door to a myriad of prosecutorial misconduct and essentially insulates such conduct from any meaningful review by this Court. It is a rare juror, even in a small town, who does not share a last name with some current or prior defendant, but who may not be even remotely related in any other way.[2]

---

[2] We also note that even if the Supreme Court's approach in *Trammel* is appropriate in a small community, where it may be more likely that people with a common last name are related, such an approach would clearly be inappropriate in a metropolitan area where it is

While we are bound by the Supreme Court's ruling, we find that under the facts of this case, *Trammel* is distinguishable. As in *Trammel*, the prosecutor made no effort to ascertain whether the two potential jurors were related to prior or current defendants in the district attorney's office. Also, as in *Trammel*, this case was tried in a relatively small locale, Houston County. As in *Trammel*, the trial judge "chose to believe the prosecutor's race-neutral explanation for striking the two jurors in question, rejecting appellant's assertion that the reasons were pretextual." (Punctuation omitted.) Id. at 158. However, despite these broad similarities, the facts of the present case demand a different result. Unlike in *Trammel*, where the prosecutor exercised fifty percent of its strikes against blacks, and where at least one black was included in the seated jury, the State in the instant case exercised sixty percent of its peremptories against black veniremen and one against a black alternate, which resulted in excluding every black person from the entire panel.

Moreover, in *Trammel*, the prosecutor struck Gilliam because she could recall 13 specific defendants prosecuted by her office within the last several years with that same name. In addition, the prosecutor in *Trammel* testified that her notes, prior to the court's solicitation of the State's explanations, did not reveal whether Gilliam was white or black. Id. at 158, n. 3. While we question the Supreme Court's decision in *Trammel*, we note that in the present case there is even less evidence to support the prosecutor's strikes. Here, the prosecutor did not state that he was concerned that the case was being tried in a small community; rather, all we have is the prosecutor's vague statement that there were "many" cases against defendants named Felder and Collins. Moreover, we note that this prosecutor did not limit his "common last name" reasoning for striking only Felder and Collins. He mentioned that he had some concern that Troupe and Johnson, discussed below, might also have relatives with pending and/or prior charges with his office. Accordingly, we reject, as clearly erroneous, the trial court's conclusion that the State exercised its strikes in a racially neutral manner.

(3) The prosecutor stated that he struck a black female named Troupe because she regularly watched the O. J. Simpson trial and because his office had "pending and prior charges on a number of Troupes," one of whom they had tried within the past few months. As discussed above, we are troubled by the trial court's acceptance of the prosecutor's explanation that he struck this juror simply because of her last name.

---

more likely that such persons would be complete strangers. Of course, the better practice would be for trial attorneys simply to ascertain whether prospective jurors are in fact related to any persons who have prior or pending criminal charges.

Moreover, we are troubled by the explanation that he also struck this juror because she regularly watched the O. J. Simpson trial. The fact that an individual has watched a trial on television does not necessarily affect his or her ability to decide a case on the merits.[3] Likewise, although the State correctly notes that the prosecutor applied his proffered reason to both a white juror and a black juror, we are mindful of the United States Supreme Court's admonition that the equal imposition of inequalities does not satisfy the demands of due process. *Shelley v. Kraemer,* supra, fn. 1.

However, the ultimate issue in resolving a *Batson* challenge is not whether the prosecutor's stated reason for the strike is a good reason, but whether it is a pretext for racial discrimination. See *Crawford v. State,* 220 Ga. App. 786, 787-788 (1) (470 SE2d 323) (1996). Thus, given the deferential standard of review applied to a trial court's factual determinations, we cannot say that the trial court erred in accepting the prosecutor's explanation in this instance.

(4) Finally, the prosecutor gave as his reasons for striking two additional black females that they were young and unemployed and that they failed to make eye contact with him. In addition, the prosecutor stated that these two jurors were completely non-responsive when he asked whether any of the jurors had watched the O. J. Simpson trial, but that they gave "spontaneous, affirmative" responses when the defense asked whether any of the jurors had made up their minds about the Simpson trial. The prosecutor also stated that with regard to one of these jurors named Johnson, "there *may* be some pending prior charges on some kin there." (Emphasis supplied.) However, the prosecutor admitted that "[w]e're not sure about that."

At the outset, we note that striking potential jurors because of their unemployment status is generally a race-neutral reason that we will uphold on appeal. See *Trice v. State,* 266 Ga. 102, 103 (2) (464 SE2d 205) (1995) ("The nature of a prospective juror's employment is not a characteristic that is peculiar to any race."). With respect to the O. J. Simpson trial, the prosecutor stated that these jurors were unresponsive when he asked whether any of the jurors had "heard or seen something about the O. J. Simpson case." However, the prosecutor was "concerned" because these same jurors gave a "spontaneous, affirmative" response to the defense attorney's question as to whether any of the potential jurors had made up their mind about

---

[3] Jurors are routinely asked whether a previous trial, television, news articles, etc. will affect their judgment, or whether they can decide the issues on the basis of the evidence presented and the law as given by the court in charge.

the Simpson case.[4] The trial judge himself stated that he observed the very conduct upon which the prosecutor based his strikes. Therefore, we "defer to the trial court's acceptance of the State's reasons as racially neutral, case-related, clear and reasonably specific." *Jones v. State*, 226 Ga. App. 428, 430 (1) (487 SE2d 62) (1997).

The prosecutor also explained that these jurors failed to make eye contact with him during voir dire. We have held that such explanations demand closer scrutiny, as they may reflect "certain stereotypical attitudes as to particular groups." *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992). See also *Parker*, supra at 362. However, in this case, the trial judge himself indicated that he observed the demeanor of the prospective jurors. Moreover, as discussed above, the State had other articulable reasons for striking these jurors apart from their demeanor. Thus, this is not the situation we found improper in *Parker* where the prosecutor based his strikes solely "on bare hunches drawn from the jurors' demeanor." Id. at 363.

Finally, with regard to Johnson, while the prosecutor noted that his office might have prosecuted some of her relatives, this did not appear to be a significant motivation in his decision to strike this juror. Accordingly, the trial court's determination that the strikes were not racially motivated was not clearly erroneous.

2. Ridley next asserts that the trial court erred in allowing a material witness to remain in the courtroom during trial and to give subsequent testimony in violation of the rule of sequestration. This argument is without merit. "No error is shown to have resulted from [the witness] remaining in the courtroom during the trial in apparent violation of the sequestration rule since no objection was made at trial." *Collins v. State*, 144 Ga. App. 102, 105 (6) (240 SE2d 597) (1977). Moreover, even if Ridley had objected to the witness' presence in the courtroom, a violation of the sequestration rule affects only the weight and credibility of the witness' testimony, not its admissibility. *Staley v. State*, 224 Ga. App. 806, 809 (3) (482 SE2d 459) (1997). Although Ridley could have sought to impeach the witness' testimony based on her presence in the courtroom throughout trial, he did not do so. Therefore, he cannot now claim that he is entitled to a new trial.

3. Next, Ridley contends that the trial court's failure to cure two prejudicial statements made by the prosecutor during closing argument constitutes reversible error. However, "because [Ridley] failed to object to the prosecutor's argument at trial, this issue may not be

---

[4] We note that the conduct the prosecutor describes could also be related to the fact that the State asks its questions on voir dire first; therefore, these jurors may have felt more comfortable with the process by the time defense counsel asked questions.

considered on appeal." *Rivers v. State*, 265 Ga. 694, 697 (7) (461 SE2d 205) (1995).

4. In his final enumeration of error, Ridley, who is represented by new counsel on appeal, claims his trial attorney provided ineffective assistance of counsel. This argument lacks merit.

"A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. Here, [Ridley] must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel." (Punctuation omitted.) *Randolph v. State*, 225 Ga. App. 324 (484 SE2d 1) (1997).

Ridley maintains that trial counsel failed to call certain witnesses, including alibi and character witnesses and DNA or fingerprint experts; to adequately prepare him for his own testimony; and to move for the dismissal of a tainted juror. At the outset, we note that Ridley's claim regarding an alleged tainted juror is not supported in his brief by any citation of authority or argument; therefore, his argument is deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2). Even if Ridley had cited authority in support of his argument, he provides no reference to the record from which we could determine to which juror he refers. "In the absence of such reference, the Court will not search for or consider such enumeration." Court of Appeals Rule 27 (c) (3) (i). Thus, we turn to Ridley's remaining contentions.

Decisions regarding which witnesses to call and "all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with the client." (Punctuation omitted.) *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995). In that regard, at the motion for new trial hearing, trial counsel testified that despite a "great deal of effort" in working with potential witnesses, he did not call them because their testimony would either conflict with the rape shield law or contradict Ridley's own defense. Moreover, during the trial, he received information that Ridley had been arrested for a murder in another county on the basis of a DNA match and thus feared that calling any character witnesses might open the door for testimony on the unrelated case. In addition, he did not call his own DNA expert as a witness because her findings would have added even more support to the State's case, and he was reluctant to have his own expert confirm the State's findings. And finally, trial counsel testified that he spoke with Ridley regarding his defense on several occasions before and during trial, which included preparing him for his testimony.

Under these circumstances, we find that counsel's strategic decisions did not deprive Ridley of effective assistance of counsel. Instead, as the trial court found "after hearing all of the overwhelming evidence against Mr. Ridley, [trial counsel's] strategy was probably the most effective."

*Judgment reversed and case remanded. Pope, P. J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED DECEMBER 3, 1998

*Daniel E. Gavrin*, for appellant.
*Kelly R. Burke, District Attorney*, for appellee.