A99A0440. CURRY v. THE STATE.
A99A0441. DANIELS v. THE STATE.
(519 SE2d 269)

BARNES, Judge.

In these companion cases, Andre Daniels and Kermit Curry appeal their convictions for selling cocaine (OCGA § 16-13-30) and possession of a firearm during the commission of a crime (OCGA § 16-11-106). Daniels and Curry were represented by the same counsel in a joint trial. In Daniels' appeal, he asserts there is insufficient evidence to support his convictions and that the trial court erred by (1) reseating six jurors peremptorily struck by the defense; (2) denying his motion to reseat four jurors who were peremptorily struck by the State; and (3) denying his motion for new trial based upon ineffective assistance of counsel. Curry asserts that he also received ineffective assistance of counsel and that the trial court erred when it reseated four jurors who were peremptorily struck by the defense.

The record shows that Curry and Daniels were arrested at an Amoco station after undercover police officers observed an informant obtain 21.1 grams of crack cocaine. The sale and delivery of the crack cocaine were arranged through two back-to-back telephone calls between the informant and Daniels which were recorded by and in the presence of Officer Taylor. In these conversations, the informant and Daniels agreed to meet at the Amoco station approximately 45 minutes after the end of their second conversation. The informant also advised Daniels that his "girlfriend," who was actually an undercover police officer, would be with him.

Officer Moten, the undercover officer posing as the informant's girlfriend, testified that she drove to the Amoco station with the informant. When they arrived, the informant, who was wearing a wire, "spotted" Daniels at a pay phone, got out of the car, walked up to Daniels, and talked with him.

Officer Taylor was parked nearby and had a receiver that allowed him to hear the conversations of the informant through the wire worn by the informant. Officer Taylor testified that, through this receiver, he heard the informant tell Officer Moten that Daniels was standing at the pay phone. When the informant walked over to

Daniels, Taylor heard Daniels tell the informant, "You can get it from the guy in the car." Officer Taylor then saw the informant and Daniels walk toward Daniels' car, where Curry handed the informant a brown paper bag. After taking the brown paper bag from Curry, the informant walked back to Officer Moten's car and handed her the bag.

Officer Moten testified that she looked into the bag and saw that it contained crack cocaine in a clear plastic bag. After verifying that the bag contained crack cocaine, Officer Moten gave the informant cash for the purchase of the cocaine and he started walking back toward Daniels' car. At the same time, she gave the code word, and Officer Taylor, as well as other officers, moved in to arrest Daniels and Curry. The officers arrested Daniels and Curry before the informant returned to them because they did not want to give Daniels, who was sitting in the driver's seat of his car, an opportunity to drive away and escape with the money. When the police searched Daniels' car after arresting him, they found a .25 caliber, semi-automatic pistol in the console between the driver and front passenger seat, which would have been within arm's reach of both Daniels and Curry when they were sitting in the car.

When the State called a forensic chemist from the Georgia Bureau of Investigation Crime Lab and asked the court to qualify her as an expert witness, defense counsel made no objection to her qualifications and stipulated that 21.1 grams of cocaine was obtained from the confidential informant. The transcript of the jury selection process shows that after prospective jurors were excused for cause, the jury panel consisted of nineteen whites and ten blacks. After peremptory strikes by the defendants and the State, the jury panel consisted of six whites and six blacks. Because Daniels and Curry, who are black, used all of their 12 peremptory strikes jointly against white prospective jurors, the State objected under *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). After hearing an explanation for the strikes from defense counsel and further argument from the State, the trial court reseated six of the white jurors struck by the defense.[1]

Pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the defense objected to the State's use of five of its six peremptory strikes against black jurors. Following the State's explanation for the strikes and additional argument from defense counsel, the trial court re-seated one of the black jurors struck by the State. The makeup of the jury that convicted the defendants was

---

[1] After defense counsel explained the basis for the strikes, the State withdrew its objection to four of the strikes, and the trial court found that the explanation provided by defense counsel for two additional strikes was valid.

seven whites and five blacks.

### Case No. A99A0441

1. Daniels asserts the trial court erred when it reseated prospective juror nos. 3, 4, 13, 22, 26, and 28 after the State objected to defense counsel's use of 12 peremptory strikes against white jurors.

In *McCollum,* supra, the United States Supreme Court "held that the equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges." *Chandler v. State,* 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). When a *McCollum* or *Batson* objection is raised, the trial court must engage in a three-step process to determine if peremptory challenges were used in a racially discriminatory manner. *Chandler,* supra, 266 Ga. at 510 (2).

First, the opponent of the strike must make a prima facie showing of racial discrimination. *Chandler,* supra, 266 Ga. at 510 (2). Then, "the proponent of the strike is required to set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of its strikes." *Barnes v. State,* 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).

> An explanation is not race-neutral if it is based on a characteristic that is peculiar to any race or on a stereotypical belief. At this point, the proponent of the strike need not offer an explanation that is persuasive or even plausible — all that is required is an explanation that is facially race-neutral.

(Footnotes omitted.) Id. In the final step,

> [t]he trial court must . . . determine, considering the totality of the circumstances, whether the opponent of the strikes has shown that the proponent was motivated by discriminatory intent in the exercise of his strikes. The opponent of the strikes may carry his burden of persuasion by showing that similarly situated jurors of another race were not struck or that the proponent's race-neutral reason for [the] strike is "so implausible or fantastic that it renders the explanation pretextual." A trial court's findings on whether the opponent of the strike has met his burden of persuasion [are] entitled to great deference and will be affirmed unless clearly erroneous.

(Footnotes omitted.) Id. "[T]he burden of persuading the trial court that the strikes were racially motivated rests with, and never shifts

from, the opponent of the strike." *Malone v. State*, 225 Ga. App. 315, 318 (1) (484 SE2d 6) (1997).

To safeguard against an improper shift of the burden of persuasion to the proponent of the strike, the trial court must separately consider each of the three parts of the *Batson-McCollum* analysis. *Malone*, supra, 225 Ga. App. at 318 (1). See also *Jackson v. State*, 265 Ga. 897, 899 (2) (463 SE2d 699) (1995). If steps two and three of the analysis are combined by a trial court, it will prematurely evaluate the persuasiveness of the proponent's explanation and erroneously place the ultimate burden of persuasion on the proponent of the strike. Id.

Daniels argues the trial court erred for two reasons when it reseated the six jurors struck by his counsel. First, the trial court did not properly apply the three-step analysis because it did not make explicit findings about whether his counsel's explanations for the strikes were race-neutral at the conclusion of step two. Second, the State then failed to fulfill its burden of persuasion because it offered no "evidence" demonstrating that his counsel's explanations were pretextual during step three of the analysis. We find no merit in these arguments.

(a) The transcript shows that after the State asserted its *McCollum* objection, the trial court found a prima facie showing of racial discrimination. It then asked defense counsel to explain its basis for each peremptory strike. After hearing defense counsel's explanations, the trial court asked for a response from the State. At the conclusion of the State's response, the trial court allowed additional argument requested by defense counsel before reseating six of the twelve jurors struck by defense counsel.

This record is sufficient to establish that the trial court accepted defense counsel's "explanations as race-neutral under the second step of the test, but at the third step chose to disbelieve them following the state's response." *Crawford v. State*, 233 Ga. App. 323, 325 (2) (504 SE2d 19) (1998). Thus, the record does not establish that the trial court improperly combined steps two and three. Contrary to Daniels' assertions, it is not necessary for the trial court to make an explicit finding that the offered explanation is valid at the conclusion of step two in the analysis. Id.; see also *Richardson v. State*, 233 Ga. App. 233, 234-235 (1) (504 SE2d 65) (1998); *Wilburn v. State*, 230 Ga. App. 619, 623 (2) (497 SE2d 380) (1998) (physical precedent only).

(b) Daniels argues that, during step three of the analysis, the opponent of a strike must offer evidence to show that the proponent's reason for the strike is merely a pretext for discrimination. We find no merit in this argument.

The opponent of a strike is not required to submit evidence which proves discriminatory intent during step three. Instead, the

opponent may carry its burden of persuasion by reference to the facts and circumstances surrounding the proponent's use of its peremptory strikes. For example, the fact that similarly situated jurors of another race were not struck could be brought to the trial court's attention. See, e.g., *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996). However, this is not the only means by which an opponent of a strike may carry its burden of persuasion.

It is well established that a trial judge, who has the opportunity to evaluate the demeanor and credibility of the proponent of a strike, may choose to disbelieve implausible or fantastic justifications for a strike during step three of the analysis. See, e.g., *Jackson*, supra, 265 Ga. at 899; *McKenzie v. State*, 227 Ga. App. 778, 779 (1) (490 SE2d 522) (1997). Thus, the opponent of a strike could carry its burden of persuasion by arguing, as in this case, that the reasons offered for a strike are implausible and urge the court to find that they are a pretext for racial discrimination. See *Barnes*, supra, 269 Ga. at 349; *McKenzie*, supra, 227 Ga. App. at 779.

2. Daniels contends the trial court erred when it refused to reseat juror nos. 8, 9, 21, and 24 after he objected to the State's use of five of its six peremptory strikes against black jurors. In support of this contention, Daniels claims the trial court failed to follow the three-step approach for evaluating a *Batson* objection. He further claims, with regard to jurors no. 8 and 21 only, that the trial court improperly determined that the State's explanation for striking these jurors was valid.

(a) The transcript shows that after defense counsel's *Batson* objection, the State did not dispute that a prima facie case of discrimination existed. The State then provided explanations for each peremptory strike. After hearing the State's explanations, the trial court asked for and received a response from defense counsel. At the conclusion of defense counsel's response, the trial court allowed additional argument from the State before reseating one of the five black jurors struck by the State. We find this record sufficient to establish that the trial court properly employed the three-step analysis. *Crawford*, supra, 233 Ga. App. at 325; *Richardson*, supra, 233 Ga. App. at 234-235.

(b) Daniels claims the trial court erred by accepting the State's explanation for striking juror no. 8 as a valid, race-neutral reason for the strike. The prosecutor told the trial court that he struck this juror because he was a butler for the mother of a defendant in a large timber case, and the prosecutor feared that the juror's relationship with this defendant or his mother might cause him to hold a grudge against the prosecutor. The prosecutor further explained that he did not question the juror about this during voir dire because he did not want to offend him and "if he was not mad at me, he might be mad

once I asked him the question." Defense counsel responded by summarizing the prosecutor's reasoning and stating, "clearly we believe, Your Honor, that is not a race-neutral reason." After hearing defense counsel's argument, the trial court stated, "I will accept that a [sic] valid race-neutral reason for striking Juror Number Eight."

In determining whether a strike was in fact racially motivated, the trial court sits as the trier of fact, and its findings "are entitled to great deference and will be affirmed unless clearly erroneous." *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996). Under this deferential standard of review, we cannot say the trial court's determination was clearly erroneous. See *Byron v. State*, 229 Ga. App. 795, 797-798 (5) (495 SE2d 123) (1997) (affirming denial of defendant's *Batson* motion when State struck jurors "because they had familial or other relationships with individuals who had been prosecuted for various offenses").

(c) Daniels claims the trial court also erred by accepting the State's explanation for striking juror no. 21. The prosecutor explained that he struck juror no. 21 because he recently prosecuted a young man named Adrian Willis for murder. The last name of juror no. 21 was also Willis, and both she and Adrian Willis lived in Waverly Hall. The prosecutor further explained that Waverly Hall is a "rather small town" and he was afraid this juror might be related to Adrian Willis or his mother and hold a grudge against the prosecutor. The prosecutor "didn't want to ask her about that directly because [he] felt like that might foster a grudge if she didn't hold one. . . ."

Relying upon our recent decision in *Ridley v. State*, 235 Ga. App. 591, 592 (1) (510 SE2d 113) (1998) (physical precedent only), Daniels argues that it is improper for the State to strike a juror when she has the same last name as a defendant in another prosecution without establishing a relationship between the juror and the defendant in the other case. In *Ridley*, we distinguished the Supreme Court's decision in *Trammel v. State*, 265 Ga. 156 (454 SE2d 501) (1995) and found the trial court erred by not reseating two jurors who were struck by the prosecutor because they had the same last name as many other individuals prosecuted by the district attorney's office. *Ridley*, supra, 235 Ga. App. at 592-594.

The outcome of this case is governed by *Trammel* and not *Ridley*. First, *Ridley* is non-binding, physical precedent because one judge on the three-judge panel concurred in the judgment only. Second, the facts of this case are closer to those at issue in *Trammel* than to the facts of *Ridley*.

In *Trammel*, the prosecutor's sole reason for striking the juror was that the juror had the same last name as at least 13 other people prosecuted by the district attorney's office and came from the same small town as the majority of those 13 previously prosecuted persons.

The prosecutor explained that, "given the small size of the town, she was concerned there might be some relationship and possible ill-feeling on the part of the juror toward the district attorney's office." *Trammel*, supra, 265 Ga. at 157. As in this case, the prosecutor did not ask during voir dire whether the juror was related to any of the defendants in the other cases. Applying the required deferential standard of review, the Supreme Court found the trial court was authorized to conclude that there was no intentional racial discrimination in the prosecutor's exercise of this peremptory strike. Id. at 158.

In *Ridley*, we distinguished *Trammel* based upon factors not present in this case. First, the State's strikes in *Ridley* resulted in every black person being excluded from the panel; in this case, six blacks remained on the jury panel after the State used its peremptory strikes. Second, the prosecutor in *Ridley*, unlike this case, did not express concern about a possible relationship between the juror and the other defendants due to the small size of the *town* in which they resided; the record showed only that the jurors lived in the same small *county* in which the other persons were prosecuted. Finally, in *Ridley*, the prosecutor used the "same last name" reason to explain why he struck four jurors; in this case, the prosecutor cited it as a reason for only one juror.

Based upon the Supreme Court's decision in *Trammel*, supra, and the deferential standard of review, we find the trial court did not clearly err when it denied the defendants' *Batson* motion with regard to juror no. 21.

3. Daniels claims he received ineffective assistance of counsel because his trial counsel (a) also represented his co-defendant Curry despite potential and real conflicts between them, (b) failed to take steps to locate and subpoena the informant who was an eyewitness, (c) stipulated that the alleged contraband was in fact cocaine, (d) failed to advise the defendant not to testify despite trial counsel's opinion that the voice on the audiotape sounded like Daniels' voice, (e) failed to make a foundation objection to the playing of an audiotape on the ground that the State failed to show that one of the parties to the conversation consented to the recording, and (f) failed to object to the hearsay statements of the informant and a female in the audiotape.

"The Sixth Amendment to the U. S. Constitution guarantees a criminal defendant the right to effective assistance of counsel." *Ross v. Kemp*, 260 Ga. 312, 313 (393 SE2d 244) (1990).

> In order to show ineffective assistance of counsel, [appellant] must show that counsel's action fell below an objective standard of reasonableness and that, but for the alleged

ineffective act, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1989); *Jowers v. State*, 260 Ga. 459 (396 SE2d 891) (1990).

*Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

A court addressing a claim of ineffectiveness of counsel is not required to address the performance portion of the inquiry before the prejudice component "or even to address both components if the defendant has made an insufficient showing on one." *Lajara*, supra, 263 Ga. at 440 (3). Finally, a trial court's finding of effectiveness must be upheld unless clearly erroneous. *Cammon v. State*, 269 Ga. 470, 472 (4) (500 SE2d 329) (1998).

(a) We find no merit in Daniels' claim that dual representation caused actual and potential conflicts which resulted in ineffective assistance of counsel.

"Single representation of multiple defendants raises no per se presumption of conflict of interest or prejudice. [Cit.]" *Hamilton v. State*, 255 Ga. 468, 470 (2) (339 SE2d 707) (1986).

In order to prevail on a claim of ineffective assistance of counsel due to a conflict of interest on the part of . . . trial counsel, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his attorney's performance. *Cuyler v. Sullivan*, 446 U. S. 335, 348 (100 SC 1708, 64 LE2d 333) (1979).

*Meyers v. State*, 265 Ga. 149, 150 (2) (454 SE2d 490) (1995).

Daniels claims that an actual conflict existed based on his testimony during cross-examination by the State that he did not know whether Curry had contraband on his person immediately before their arrest because he "didn't strip-search him." According to Daniels, his trial counsel should have advised him to concede that "Curry may have delivered contraband but deny that he himself had any involvement in the illegal enterprise, if that were the truth."

This argument inaccurately characterizes Daniels' testimony. Daniels never testified that he did not know if Curry had cocaine on his person. Instead, he testified to the contrary: "Q. Do you know whether or not [Curry] brought some cocaine to the Amoco station? A. I didn't strip search him, I didn't — but, no, he didn't." We fail to see how this testimony demonstrates an actual conflict of interest for defense counsel that adversely affected his performance. Both defendants testified and denied any involvement in a drug transaction at the Amoco station. As in *Stephens v. State*, 214 Ga. App. 183,

187 (9) (b) (447 SE2d 26) (1994), "the testimony of both co-defendants was wholly exculpatory of the other." Because Daniels has failed to demonstrate an actual conflict that adversely affected his trial counsel's representation of Curry, the trial court did not err when it denied Daniels' motion for a new trial on this ground.

(b) Daniels claims his attorney was also ineffective because he failed to take steps to locate and subpoena the informant. According to Daniels, the informant was crucial to his defense because he was the only eyewitness to the alleged drug transaction other than law enforcement officers and the defendants. Daniels acknowledges in his brief that his lawyer could have made a strategic decision not to call the informant, but claims his lawyer's failure to try to locate the witness cannot be justified.

The record shows that Daniels' trial counsel was not the first attorney jointly hired by the defendants. Another attorney represented them after their indictment in May 1995 and until he was fired in September 1997. The attorney who represented the defendants at trial filed an entry of appearance on October 2, 1997, and the defendants' trial started on December 8, 1997.

In the motion for new trial hearing, defendants' trial counsel testified that he obtained the name of the confidential informant from both the defendants and the State. He further testified that the defendants told him they could not locate the informant. After the State also provided trial counsel with the confidential informant's name, defendants' trial counsel contacted the district attorney handling the case and learned they did not plan to call the informant because they could not locate him. According to trial counsel, "since the case was so old, they [the district attorney's office] had no idea where he was or anybody that was associated with him." Finally, trial counsel testified that there was a risk his defense strategy of trying to discredit the testimony of the police officers would have been undermined if the confidential informant had testified at trial. In his opinion, the informant was likely to support the police officer's version of the drug transaction.

Because the confidential informant did not testify at trial or at the motion for new trial hearing, there is no evidence in the record supporting Daniels' claim that this witness was crucial to his defense or that this witness could have been located. Thus, even if we were to assume that trial counsel should have taken additional steps to locate and interview this witness, Daniels has failed to show how this failure prejudiced his defense. See *Letson v. State*, 236 Ga. App. 340, 342 (2) (512 SE2d 55) (1999); *Polk v. State*, 225 Ga. App. 257, 259 (1) (c) (483 SE2d 687) (1997). As a result, the trial court did not clearly err when it denied this portion of Daniels' claim that his counsel was ineffective.

(c) We cannot consider Daniels' claim that his counsel was ineffective because he stipulated that the alleged contraband was cocaine. This argument was not made in Daniels' motion for new trial which alleged his trial counsel was ineffective for other reasons. Likewise, Daniels did not make this argument during the hearing on his motion for new trial. Since Daniels failed to make this argument at the earliest practical opportunity, it is waived. *Seese v. State*, 235 Ga. App. 181, 183-184 (3) (509 SE2d 94) (1998).

(d) Daniels asserts his trial counsel was ineffective for failing to advise Daniels that he should not testify because the voice on the audiotape sounded like Daniels' voice. The record shows that Daniels' attorney *did* advise Daniels not to testify, but did not tell him he thought the voice on the tape sounded like Daniels. Trial counsel testified that after he listened to the tape with Daniels, he asked Daniels if it was his voice on the tape and Daniels denied that it was. Trial counsel explained that he did not tell Daniels he thought the voice on the tape sounded like Daniels because Daniels had denied that it was his voice on the tape, and he "took him at his word."

Because Daniels did not testify during the motion for new trial hearing, there is no evidence in the record showing he would have followed his trial counsel's advice not to testify if he had been told that his voice sounded like the voice on the tape. Moreover, both in the trial court and in this Court, Daniels made no argument or showing that the outcome of his trial would have been different had he not testified. Since Daniels has failed to show how he was prejudiced by this alleged deficiency of his trial counsel, the trial court did not err when it denied this portion of Daniels' new trial motion.

(e) Both of Daniels' remaining claims of ineffective assistance of counsel relate to the admission of the recorded telephone conversations between Daniels and the informant. He argues that his trial counsel (1) improperly allowed the tape to be played to the jury because the State failed to lay a proper foundation for admission of the tapes, and (2) failed to object to portions of the audio recording which were hearsay.

Daniels claims there was no proper foundation for admission of the recorded conversations because there was no evidence showing that the informant and Daniels made the statements in the recorded conversation freely and voluntarily. See *Central of Ga. R. Co. v. Collins*, 232 Ga. 790, 793-794 (3) (209 SE2d 1) (1974); *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 211 (3) (88 SE2d 167) (1955). The record shows that Daniels' trial counsel did object to the admission of the tapes on the grounds that no showing had been made that the informant made the statements on the tape freely and voluntarily. Trial counsel withdrew this objection after the police officer testified that he did not ask the informant to place the telephone calls which

were recorded, that he did not threaten the informant in any way to get him to place the calls, that the informant freely and voluntarily agreed to place the calls, and that the informant knew the conversations were being taped. Since this testimony is adequate to establish that the informant freely and voluntarily made the statements in the telephone conversations, the withdrawal of trial counsel's objection did not render his performance deficient. See *Ramsey v. State*, 165 Ga. App. 854, 857 (3) (303 SE2d 32) (1983).

Likewise, given the facts and circumstances of this case, trial counsel's failure to request a *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), hearing on the voluntariness of Daniels' alleged statements in the telephone conversations did not render his performance deficient. The recorded conversations do not reveal a lack of voluntary participation in the telephone calls, and Daniels denied that he was the person talking with the informant in these conversations. Since Daniels denied participating in these phone calls, it would have been inconsistent to assert that he made these statements, but did not do so voluntarily. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. Trial tactics and strategy do not equal ineffectiveness. *Key v. State*, 230 Ga. App. 359, 360 (1) (496 SE2d 497) (1998).

We find no merit in Daniels' claim that his trial counsel was ineffective because he did not raise a hearsay objection to the statements of the informant throughout the recorded conversations, as well as the statements of a female who answered the phone and advised "Andre" the call was for him. The statements of the informant were admissible and not subject to a valid hearsay objection. *Brundage v. State*, 265 Ga. 813, 814 (2) (462 SE2d 719) (1995). Assuming, without deciding, that the female's statements might have been subject to a valid hearsay objection, Daniels has failed to show how he was harmed by her statements, which were cumulative of other testimony at trial. See *Key*, supra, 230 Ga. App. at 360. Daniels admitted that he lived with his grandmother at 975 Nelson Road. Telephone books used during cross-examination of Daniels at trial showed that his grandmother's telephone number for this location was the same number dialed in the recorded conversations. Additionally, Officer Taylor testified that when he overheard Daniels speak to the informant at the Amoco station, he recognized his voice as the same one he had heard in the recorded conversations approximately 40 minutes earlier.

4. In his final enumeration of error, Daniels argues that insufficient evidence supports his "conviction," but he fails to identify which conviction is not supported by the evidence or explain why the

evidence is insufficient. Despite these shortcomings in Daniels' brief, we have nonetheless reviewed the evidence and find it sufficient to support both convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Case No. A99A0440*

5. In his first enumeration of error, Curry contends he received ineffective assistance of counsel because his counsel also represented Daniels, failed to communicate a plea offer, and failed to move for a directed verdict of acquittal on the charge that he possessed a firearm during the commission of a crime.

(a) For the reasons stated in Division 3 (a) of this opinion, we find no merit in Curry's claim that his counsel was ineffective as a result of his dual representation of Curry and Daniels.

(b) We find no merit in Curry's assertion that his counsel failed to communicate a plea offer. Curry's trial counsel testified in the motion for new trial hearing that he did advise Curry and Daniels of the State's plea offer, but both of them insisted they were innocent and refused to consider a plea that involved any jail time whatsoever. Although Curry denied that his trial counsel told him of the plea offer, " 'the credibility of these witnesses was a matter for the trial court's discretion.' " *Ford v. State*, 234 Ga. App. 301, 303 (2) (506 SE2d 668) (1998).

(c) Curry claims his counsel was ineffective for failing to move for a directed verdict of acquittal on the possession of a firearm charge. See OCGA § 16-11-106. In the motion for new trial hearing, Curry's trial counsel explained that he did not move for a directed verdict on this count because he believed the State had presented sufficient evidence to create a jury question. Based on our review of the evidence, we agree with trial counsel's assessment.

OCGA § 16-11-106 (b) (4) provides: "Any person who shall have on *or within arm's reach of his person a firearm* . . . during the commission of . . . [a]ny crime involving the . . . selling . . . [of] any controlled substance . . . and which crime is a felony, commits a felony. . . ." (Emphasis supplied.) Since the evidence at trial showed that the gun was found in a console in Daniels' car that was "within arm's reach" of Curry, it was sufficient to support his conviction for violating OCGA § 16-11-106 (b) (4). See *Gibson v. State*, 223 Ga. App. 103 (1) (476 SE2d 863) (1996); *Victrum v. State*, 203 Ga. App. 377, 379-380 (3) (416 SE2d 740) (1992).

6. In his second enumeration of error, Curry contends the trial court erred when it reseated four white jurors (nos. 3, 4, 12, and 22) who had been struck by his counsel. Like Daniels, his sole argument on appeal is that the record does not show the trial court separately

considered each step of the three-part *Batson-McCollum* analysis. We find no merit in this enumeration for the reasons stated in Division 1 (a) of this opinion.

*Judgment affirmed. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 10, 1999.

*William P. Nash, Jr.*, for appellant (case no. A99A0440).

*Ellis C. Smith, James C. Thornton*, for appellant (case no. A99A0441).

*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.